Argued and submitted March 4, decision of the Court of Appeals affirmed
April 15, cert granted September 28, 1993

## GILLIAM COUNTY, OREGON,
### and Oregon Waste Systems, Inc.,
*Petitioners on Review,*

*v.*

## DEPARTMENT OF ENVIRONMENTAL QUALITY OF THE STATE OF OREGON,
*Respondent on Review.*

(DEQ 45-1990; CA A68441 (Control); SC S39659)

## COLUMBIA RESOURCE COMPANY, L.P.,
### a Washington Limited Partnership,
*Petitioner on Review,*

*v.*

## ENVIRONMENTAL QUALITY COMMISSION,
*Respondent on Review.*

(CA A68455; SC S39658)
(Cases Consolidated)

849 P2d 500

John DiLorenzo, of O'Connell, Goyak & DiLorenzo, Portland, argued the cause and filed the petition for petitioner on review Columbia Resource Company, L.P. With him on the petition was Michael E. Farnell.

J. Laurence Cable, of Cable, Huston, Benedict, Haagensen & Ferris, Portland, argued the cause for petitioner on review Oregon Waste Systems, Inc. James E. Benedict filed the petition for review. With Mr. Benedict on the petition was James M. Coleman, of O'Donnell, Ramis, Crew & Corrigan, Portland, who waived argument for petitioner on review Gilliam County, Oregon.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondents on review. With him on the response to the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

GRABER, J.

## GRABER, J.

At issue in this case is the validity of regulations imposing a per-ton surcharge on the disposal in Oregon of solid waste generated outside the state. ORS 459.297(1) provides:

"Beginning on January 1, 1991, every person who disposes of solid waste generated out-of-state in a disposal site or regional disposal site shall pay a surcharge as established by the Environmental Quality Commission under ORS 459.298. The surcharge shall be in addition to any other fee charged for disposal of solid waste at the site."

ORS 459.298 provides:

"Subject to approval by the Joint Committee on Ways and Means during the legislative sessions or the Emergency Board during the interim between sessions, the Environmental Quality Commission shall establish by rule the amount of the surcharge to be collected under ORS 459.297. The amount of the surcharge shall be based on the costs to the State of Oregon and its political subdivisions of disposing of solid waste generated out-of-state which are not otherwise paid for under the provisions of [statutes relating to solid waste disposal, domestic solid waste disposal, and household hazardous waste disposal]. These costs may include but need not be limited to costs incurred for:

"(1)   Solid waste management;

"(2)   Issuing new and renewal permits for solid waste disposal sites;

"(3)   Environmental monitoring;

"(4)   Ground water monitoring; and

"(5)   Site closure and post-closure activities."

As authorized by ORS 459.297 and 459.298, the Environmental Quality Commission (EQC) promulgated rules pertaining to the disposal of solid waste. OAR 340-61-115(1) provides in part:

"Beginning July 1, 1984, each person required to have a Solid Waste Disposal Permit shall be subject to a three-part fee consisting of a filing fee, an application processing fee and an annual compliance determination fee as listed in OAR 340-61-120. In addition, each disposal site receiving domestic solid waste shall be subject to an annual recycling program implementation fee as listed in OAR 340-61-120, and a

per-ton fee on domestic solid waste * * *. In addition, each disposal site or regional disposal site receiving waste generated out-of-state shall pay a surcharge * * *."

OAR 340-61-120(6) provides:

"Surcharge on disposal of waste generated out-of-state. Each solid waste disposal site or regional solid waste disposal site that receives solid waste generated out-of-state shall submit to the Department of Environmental Quality a per-ton surcharge of $2.25. This surcharge shall apply to each ton of out-of-state waste received at the disposal site[.]"

Petitioners Oregon Waste Systems, Inc., Columbia Resource Company, L.P., and Gilliam County, Oregon,[1] sought judicial review of OAR 340-61-115(1) and 340-61-120(6) in the Court of Appeals pursuant to ORS 183.400.[2]

---

[1] The Court of Appeals explained petitioners' interest in the surcharge:

"Petitioner Oregon Waste Systems, Inc. (OWS), owns and operates a regional solid waste disposal facility known as the Columbia Ridge Recycling Center and Landfill. It is located southwest of Arlington in Gilliam County. OWS disposes of waste generated in Oregon and also waste generated outside of Oregon. The operation provides direct and indirect benefits to petitioner Gilliam County as a result of employment in the county and the payment of local fees and taxes.

"Petitioner Columbia Resource Company, L.P. (CRC), has a 20-year contract with Clark County, Washington, under which it disposes of solid waste originating there. CRC uses the Finley Buttes Landfill in Morrow County as its disposal site. The operator of the Finley Buttes Landfill passes through to CRC the costs incurred for disposal, including charges made by respondent Department of Environmental Quality (DEQ)."

*Gilliam County v. Dept. of Environmental Quality*, 114 Or App 369, 372, 837 P2d 965 (1992).

[2] ORS 183.400 provides in part:

"(1) The validity of any rule may be determined upon a petition by any person to the Court of Appeals in the manner provided for review of orders in contested cases. The court shall have jurisdiction to review the validity of the rule whether or not the petitioner has first requested the agency to pass upon the validity of the rule in question, but not when the petitioner is a party to an order or a contested case in which the validity of the rule may be determined by a court.

"* * * * *

"(3) Judicial review of a rule shall be limited to an examination of:

"(a) The rule under review;

"(b) The statutory provisions authorizing the rule; and

"(c) Copies of all documents necessary to demonstrate compliance with applicable rulemaking procedures.

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions;

Petitioners argue that, because ORS 459.298 requires approval of the amount of the surcharge by the Joint Ways and Means Committee or by the Emergency Board and because those approval provisions are not severable from the remainder of the statute, ORS 459.298 violates Article I, section 21;[3] Article III, sections 1[4] and 3;[5] Article IV, section 25;[6] and Article V, section 15b,[7] of the Oregon Constitution. As a result, they argue, the implementing regulations also are invalid. In the alternative, petitioners argue that, even if ORS 459.298, OAR 340-61-115(1), and OAR 340-61-120(6) are valid under the Oregon Constitution, they are invalid because they impermissibly discriminate against interstate commerce

---

"(b)  Exceeds the statutory authority of the agency; or

"(c)  Was adopted without compliance with applicable rulemaking procedures."

[3] Article I, section 21, of the Oregon Constitution, provides in part:

"[N]or shall any law be passed, the taking effect of which shall be made to depend upon any authority, except as provided in this Constitution[.]"

[4] Article III, section 1, of the Oregon Constitution, provides:

"The powers of the Government shall be divided into three seperate (sic) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

[5] Article III, section 3, of the Oregon Constitution, provides in part:

"(1) The Legislative Assembly is authorized to establish by law a joint committee composed of members of both houses of the Legislative Assembly, the membership to be as fixed by law, which committee may exercise, during the interim between sessions of the Legislative Assembly, such of the following powers as may be conferred upon it by law[.]"

The enumerated powers include the power, in an emergency, to allocate funds to state agencies, to authorize state agencies to expend funds already allocated but in excess of agency budgets, and to revise or amend the budgets of state agencies; and the power to approve, or revise and approve, budgets for new activities. *Id.* at § 3(1)(a) to (d).

[6] Article IV, section 25, of the Oregon Constitution, provides:

"A majority of all the members elected to each House shall be necessary to pass every bill, or Joint resolution; and all bills, and Joint resolutions so passed, shall be signed by the presiding officers of the respective houses."

[7] Article V, section 15b, of the Oregon Constitution, provides in part:

"(1) Every bill which shall have passed the Legislative Assembly shall, before it becomes a law, be presented to the Governor; if the Governor approve, the Governor shall sign it; but if not, the Governor shall return it with written objections to that house in which it shall have originated[.]"

in violation of the Commerce Clause, Article I, section 8, clause 3,[8] of the Constitution of the United States.

Respondent Department of Environmental Quality (DEQ), the state agency for which EQC is the policy making body, concedes that, "to the extent [that ORS 459.298] subjects DEQ's surcharge determination to Emergency Board approval," that statute is unconstitutional under Article III, sections 1 and 2,[9] and Article IV, section 25, of the Oregon Constitution. DEQ argues, however, that that portion of the statute is severable and that the remainder of the statute and its accompanying regulations are valid under the Oregon Constitution and under the Commerce Clause, Article I, section 8, clause 3, of the Constitution of the United States.

The Court of Appeals accepted DEQ's concession as to the unconstitutionality of the portion of ORS 459.298 relating to approval of the surcharge by the Emergency Board, concluding that that portion violates Article III, section 3, of the Oregon Constitution. *Gilliam County v. Dept. of Environmental Quality*, 114 Or App 369, 375-76, 837 P2d 965 (1992). The Court of Appeals concluded that the portion of ORS 459.298 relating to approval of the surcharge by the Joint Committee on Ways and Means also is unconstitutional, because it violates Article IV, section 25, of the Oregon Constitution. *Id.* at 379-80. The court held, however, that those portions of the statute are severable and that "the language that remains after both approval provisions are deleted is still a workable statute that contains clear standards for EQC to follow." *Id.* at 378, 382-83. Next, the Court of Appeals held that OAR 340-61-115(1) and 340-61-120(6) do not violate the Commerce Clause, because the surcharge imposed on out-of-state waste is a permissible "compensatory fee for specific costs incurred by the state" in the disposal of that waste and because, under the scope of review granted to the court by ORS 183.400, the court could not say that the

---

[8] Article I, section 8, clause 3, of the Constitution of the United States, provides:

"The Congress shall have Power * * * To regulate Commerce * * * among the several States[.]"

[9] Article III, section 2, of the Oregon Constitution, provides:

"The Legislative Assembly shall have power to establish an agency to exercise budgetary control over all executive and administrative * * * agencies of the State Government."

amount of that fee either impermissibly exceeds those state costs or is insufficiently related to the services provided by the state in relation to disposal of out-of-state waste. *Id.* at 383-88. We affirm the decision of the Court of Appeals.

We begin by considering petitioners' state law claims. *See State v. Kennedy*, 295 Or 260, 262, 666 P2d 1316 (1983) (court decides questions of state law before reaching federal constitutional issues). Further, "[t]his court follows the principle that constitutional issues should not be decided when there is an adequate statutory basis for a decision." *Planned Parenthood Assn. v. Dept. of Human Resources*, 297 Or 562, 564, 687 P2d 785 (1984).

■　In a challenge to a regulation under ORS 183.400(4), this court first decides whether the regulation was promulgated according to applicable rulemaking procedures. ORS 183.400(4)(c). We then decide whether the promulgation of the regulation was within the jurisdictional authority of the promulgating agency and whether the substance of the regulation neither departed from the legal standard expressed or implied in the enabling statute, nor contravened any other applicable statute. ORS 183.400(4)(b). Only after determining that the regulation meets those requirements do we consider the question whether the regulation violates any provision of the Oregon or United States Constitution. ORS 183.400(4)(a). *See Planned Parenthood Assn. v. Dept. Of Human Resources, supra*, 297 Or at 565 (setting forth that three-part analysis).

First, petitioners make no contention that the challenged regulations were "adopted without compliance with applicable rulemaking procedures," namely, the rulemaking procedures established by ORS 459.298. ORS 183.400(4)(c).

Next, as petitioners concede, EQC had jurisdictional authority to promulgate OAR 340-61-115(1) and 340-61-120(6). Petitioners do not contend that those regulations depart from the legal standards expressed or implied in the authorizing statute, ORS 459.298.

■　Petitioners contend, however, that, because the regulations include the cost of out-of-state waste reduction certification as a component of the surcharge, they contravene ORS 459.305. We disagree. ORS 459.305(1) provides that

disposal sites may not accept waste generated outside the county in which the site is located unless DEQ certifies that the latter area has implemented a recycling program. ORS 459.305(4) permits DEQ to establish, according to the rulemaking procedures provided in ORS 468.065, a certification fee in relation to that requirement. Nothing in ORS 459.305 or 468.065 prohibits DEQ from including the cost to the state of certifying out-of-state waste reduction programs as a component of the surcharge authorized under ORS 459.298.

For the above reasons, we conclude that OAR 340-61-115(1) and 340-61-120(6) are not invalid under ORS 183.400(4)(b) in any of the particulars urged by petitioners.

We thus reach the question whether OAR 340-61-115(1) and 340-61-120(6) violate any provisions of the Oregon or United States Constitution, ORS 183.400(4)(a), and turn to petitioners' state constitutional claim. We begin by asking whether, as petitioners allege, the statute in accordance with which those regulations were promulgated is itself impermissible in relation to any provision of the Oregon Constitution. *See* ORS 183.400(3)(b) (judicial review of rule includes examination of statutory provisions authorizing the rule).

■■ As did the Court of Appeals, we conclude that ORS 459.298 is unconstitutional in two respects. First, as respondent concedes, ORS 459.298 is constitutionally impermissible insofar as it requires approval of EQC's rules by the Emergency Board. Second, the statute is constitutionally impermissible insofar as it requires approval of EQC's rules by the Joint Committee on Ways and Means. As written, ORS 459.298 requires either the Emergency Board (in the interim between legislative sessions) or the Joint Committee on Ways and Means (during sessions of the Legislative Assembly) to approve the rules before they can become legally effective. That requirement gives the Emergency Board or the Joint Committee on Ways and Means the right to veto the rules. But, a veto is a legislative act, and a legislative act by less than a majority vote of each chamber is unconstitutional. *See* Or Const, Art III, § 3, set out in part at note 5, *supra* (authorizing establishment of Emergency Board with certain enumerated powers, not including the power to approve or disapprove the

rules at issue in this case); Or Const, Art IV, § 25, set out in part at note 6, *supra* (legislation must be passed by a majority of all members of each house of the Legislative Assembly and signed by the presiding officers of the respective houses); Or Const, Art V, § 15b, set out in part at note 7, *supra* (legislative enactments must be presented to Governor and either signed by her or returned to legislature with written objections). *See also INS v. Chadha,* 462 US 919, 103 S Ct 2764, 77 L Ed 2d 317 (1983) (a provision of the Immigration and Nationality Act that authorized *either* house of Congress, by resolution, to veto a decision of the Executive Branch to allow a deportable alien to remain in the United States was unconstitutional; citing Article I, sections 1 and 7, of the Constitution of the United States, the Court held that the challenged provision violated the principle of separation of powers and allowed a legislative veto by less than a vote of each chamber).

■ Nevertheless, the statute as a whole need not be invalidated if the portions that have been found constitutionally impermissible are severable from the remainder. The severability of unconstitutional portions of a statute is governed by ORS 174.040, which provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

Nothing in the text of ORS 459.298 provides that, if any part of that statute were held to be unconstitutional, the remaining parts should not remain in force. *See* ORS 174.040(1), *supra.*

Neither are the portions of ORS 459.298 relating to the establishment of the surcharge by EQC and to the bases of that surcharge "so essentially and inseparably connected

with and dependent upon" the approval portions of the statute that it is apparent, either from the text or from the legislative history of the statute, that the former parts would not have been enacted without the latter. *See* ORS 174.040(2), *supra*. ORS 459.298 is part of a comprehensive statutory scheme of regulating solid waste, which includes many sections authorizing public bodies to impose fees to recover their costs.[10] The overriding purpose of ORS 459.298, as revealed by its text and context, is to permit the establishment and collection of fees.

We also note, as did the Court of Appeals, the pertinent legislative history. The committee that considered HB 3515, which became Oregon Laws 1989, chapter 833, and which included the challenged provision, was told that "the Emergency Board does not have the approval authority[,] * * * it is a review and comment only." The committee instructed its staff to use "the toughest language we can have for E-Board control over the fee," but the legislature did not add a nonseverability provision. Tape Recording, Ways and Means Committee Subcommittee on Transportation and Regulation, June 24, 1989, Tape 155, Side B.

The legislature's permissible choice was between having no surcharge on the disposal of solid waste generated out of state and having a surcharge established by EQC without a veto by the Emergency Board or Joint Committee

---

[10] Those include: ORS 459.053(9) (DEQ — fees to repay department costs and fund operation and maintenance of a department-owned landfill disposal site); ORS 459.125(1)(d) (Marion County — fees to control and regulate disposal, transfer, and resource recovery sites located in the county); *former* ORS 459.170(1)(g) (renumbered 459A.025 in 1991) (EQC — fees to carry out various provisions of the chapter); *former* ORS 459.200(7)(b) (renumbered 459A.085 in 1991) (cities and counties — fees from persons holding collection service franchises); ORS 459.235 (fee for permit to operate a disposal site); ORS 459.236 (permit fees imposed on all disposal sites to pay for removal or remediation of hazardous substances); ORS 459.284 (permit fees that are imposed on governmental unit that has a disposal site to be used for rehabilitation and enhancement of the area around the site); *former* ORS 459.294 (renumbered 459A.110 and amended by Or Laws 1991, ch 385, § 91) and *former* ORS 459.295 (renumbered 459A.120 in 1991) (EQC — schedule of fees for receipt of domestic solid waste; to be used to reduce environmental risks at waste disposal sites); ORS 459.305(4) (fee for certification that a governmental unit has implemented recycling opportunity provisions); ORS 459.310 (local governments can impose surcharge on solid waste received at regional disposal sites); ORS 459.311 (local governments must charge for remedial action or removal at solid waste disposal site); ORS 459.335 (user fees set by metropolitan service district); and ORS 459.509 to 459.765 (fees for sale of new tires and disposal of waste tires).

on Ways and Means. As between the two, we believe that the legislature intended to have a surcharge.

Finally, ORS 459.298 is neither incomplete, nor incapable of being executed, in the absence of the approval portions of the statute. *See* ORS 174.040(3), *supra.*

The portions of ORS 459.298 relating to approval of the surcharge by the Emergency Board or the Joint Committee on Ways and Means, being unconstitutional and severable, are deleted from the statute. The remaining portions of the statute shall continue in force.

Petitioners have made no other challenges under the Oregon Constitution to OAR 340-61-115(1) and 340-61-120(6), beyond those already discussed. We turn, therefore, to petitioners' claim that ORS 459.298, OAR 340-61-115(1), and OAR 340-61-120(6) impermissibly discriminate against interstate commerce in violation of Article I, section 8, clause 3, of the Constitution of the United States. For the following reasons, we conclude that they do not.

■ The Commerce Clause grants to Congress the power to regulate commercial transactions among the states, subject to the specific guarantees of the Constitution of the United States. By that grant of power to Congress, the Commerce Clause implicitly "limits the power of the States to discriminate against interstate commerce." *Wyoming v. Oklahoma*, ___ US ___, 112 S Ct 789, 800, 117 L Ed 2d 1 (1992); *see also New Energy Co. of Indiana v. Limbach*, 486 US 269, 273, 108 S Ct 1803, 100 L Ed 2d 302 (1988) (stating that principle). As the Supreme Court of the United States has explained, "[t]his 'negative' aspect of the Commerce Clause prohibits economic protectionism — that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach, supra*, 486 US at 273-74.

■■ Consistent with that proscription, states may not enact laws that discriminate against articles of commerce[11]

---

[11] "Solid waste, even if it has no value, is an article of commerce" for Commerce Clause purposes. *Fort Gratiot Landfill v. Mich. Dept. of Nat. Res.*, ___ US ___, 112 S Ct 2019, 2023, 119 L Ed 2d 139 (1992); *see also Chemical Waste Management v.*

coming from outside the state unless there is some reason, apart from their origin, for treating those articles differently. *City of Philadelphia v. New Jersey,* 437 US 617, 626-27, 98 S Ct 2531, 57 L Ed 2d 475 (1978). *Cf. Chemical Waste Management v. Hunt,* ___ US ___, 112 S Ct 2009, 2013-15, 119 L Ed 2d 121 (1992) (where the only discernible basis for an additional fee imposed on out-of-state waste was the origin of the waste, "invalidity under the Commerce Clause necessarily follows"). The burden is on the state to show that a differential charge " 'is demonstrably justified by a valid factor unrelated to economic protectionism.' " *Id.* at 2015 (quoting *Wyoming v. Oklahoma, supra,* 112 S Ct at 801). *See Fort Gratiot Landfill v. Mich. Dept. of Nat. Res.,* ___ US ___, 112 S Ct 2019, 119 L Ed 2d 139 (1992) (holding invalid on Commerce Clause grounds a Michigan statute prohibiting landfills from accepting solid waste generated outside the county in which the landfill was located, unless the acceptance of such waste was explicitly authorized by the receiving county; after rejecting the state's argument that the restriction was justified on the ground that it treated waste from other Michigan counties no differently than waste from other states, and its argument that the statute constituted a "comprehensive health and safety regulation rather than 'economic protectionism,' " the Court concluded that the state failed to advance "any legitimate reason for allowing [landfills] to accept waste from inside the county but not waste from outside the county").

■   We apply those principles to the statutes and regulations at issue here. ORS 459.297 requires EQC to promulgate regulations establishing a surcharge on the disposal of out-of-state solid waste. ORS 459.298 requires EQC to base the amount of that surcharge on the "costs to the State of Oregon and its political subdivisions of disposing of solid waste generated out-of-state which are not otherwise paid for" under other waste disposal programs, including costs arising from permit issuance, management, monitoring, and closure activities at disposal sites accepting out-of-state waste. On their face, OAR 340-61-115(1) and 340-61-120(6) purport to comply with those statutory mandates.

*Hunt,* ___ US ___, 112 S Ct 2009, 2012 n 3, 119 L Ed 2d 121 (1992) (same); *City of Philadelphia v. New Jersey,* 437 US 617, 622-23, 98 S Ct 2531, 57 L Ed 2d 475 (1978) (same).

Because of the express nexus to actual costs incurred, we conclude that the surcharge authorized by ORS 459.297 and 459.298, and established by OAR 340-61-115(1) and 340-61-120(6), does not, on its face, constitute discrimination against an article of commerce, the origin of which is outside the state. There is a discernible basis for the surcharge apart from that origin. *See City of Philadelphia v. New Jersey, supra*, 437 US at 626-27 (establishing that test). Through the statutory and regulatory criteria, the state has met its burden of showing that the surcharge "is demonstrably justified by a valid factor unrelated to economic protectionism." *Chemical Waste Management v. Hunt, supra*, 112 S Ct at 2015.

We further conclude that, rather than being a constitutionally impermissible burden on out-of-state economic interests, *New Energy Co. of Indiana v. Limbach, supra*, the surcharge imposed on out-of-state waste by ORS 459.298 and its implementing regulations constitutes a "compensatory" fee for specific costs incurred by the state in the regulation of that waste. *See Commonwealth Edison v. Montana*, 453 US 609, 621-22, 622 n 12, 101 S Ct 2946, 69 L Ed 2d 884 (1981) (describing such fees). A law imposing a compensatory fee for costs incurred by a state in supervising and regulating the activities of an entity engaged in interstate commerce is *prima facie* reasonable. *Great Northern Ry. Co. v. Washington*, 300 US 154, 160, 57 S Ct 397, 81 L Ed 573 (1937). Such a law violates the Commerce Clause only where the amount of the fee is "manifestly disproportionate to the services rendered." *Clark v. Paul Gray, Inc.*, 306 US 583, 599, 59 S Ct 744, 83 L Ed 1001 (1939). *See Evansville-Vanderburgh Airport Authority Dist. v. Delta Airlines, Inc.*, 405 US 707, 92 S Ct 1349, 31 L Ed 2d 620 (1972) (fees reflecting a fair approximation of the use of facilities and not excessive in relation to costs incurred do not violate the Commerce Clause); *Ingles v. Morf*, 300 US 290, 294, 57 S Ct 439, 81 L Ed 653 (1936) (a fee burdening interstate commerce may be justified by showing that it constitutes "reimbursement for the expense of providing facilities, or of enforcing regulations of the commerce").

Petitioners contend that, even assuming that *some* fee could be imposed without offending the Commerce Clause, the present fees do offend the Commerce Clause,

because they are "disproportionate." Such a claim cannot be adjudicated in the present proceeding. Our scope of review under ORS 183.400 precludes us from deciding whether the surcharge is impermissible as "disproportionate" to the services rendered or to the costs incurred by the State of Oregon in connection with permitting waste disposal sites to accept solid waste generated out of state, because those are factual inquiries. As this court noted in *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 79, 843 P2d 409 (1992), "judicial review under ORS 183.400 is limited to the face of the rule and the law pertinent to it. Numerous individual fact situations can arise under any rule, but judicial review of the rule as applied to each of those situations is reserved to other forums." Similarly, petitioners' claim of disproportionality may not be addressed in this proceeding under ORS 183.400.

The decision of the Court of Appeals is affirmed.