Argued and submitted September 10, 1992; resubmitted In Banc August 11, 1993, judgment modified in part; otherwise affirmed February 23, petition for review allowed May 31, 1994 (319 Or 149)

CITY UNIVERSITY,
a Washington corporation,
*Respondent,*

*v.*

STATE OF OREGON,
OFFICE OF EDUCATIONAL
POLICY AND PLANNING;
its Director, Paul E. Bragdon;
and its Administrator,
Academic Degrees and Program Review,
David A. Young,
*Appellants.*

(88C-11645; CA A70734)

870 P2d 222

Jas. Adams, Assistant Attorney General, argued the cause for appellants. With him on the briefs were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General.

Jacob Tanzer argued the cause for respondent. With him on the brief were Bruce W. DeKock and Ball, Janik & Novack.

EDMONDS, J.

De Muniz, J., concurring in part, dissenting in part.

## EDMONDS, J.

The State of Oregon appeals from a declaratory judgment that held ORS 348.835(2)(c) unconstitutional under the Commerce Clause[1] and struck the word "Oregon" from the statute in order to preserve it. We modify the judgment.

Plaintiff filed this declaratory action seeking a declaration that ORS 348.835(2)(c) is unconstitutional and an injunction prohibiting defendants from applying the statute and the rules promulgated under it to plaintiff. ORS 348.835 provides:

"(1) No school or other institution of learning shall confer or offer to confer any degree upon any person, in recognition of the attainment or proficiency of such person, in pursuing or graduating from any course conducted by it, without first having submitted the requirements for such degree to the Oregon Office of Educational Policy and Planning and having obtained the approval of the director.

"(2) ORS 348.830 to 348.885 shall not apply to:

"(a) Any school or institution of learning which has been established and conducted within this state, and has conferred degrees for a period of 15 years prior to March 4, 1935;

"(b) Any school conducted under the public educational system of the state;

"(c) Any Oregon school which is a member in good standing of the Northwest Association of Schools and Colleges; or

"(d) Schools of theology operating on a post-baccalaureate degree level."

The trial court ruled in favor of plaintiff. It said:

"[ORS 348.835(2)(c)] is clearly not a neutral statute. It is a discriminatory statute whose purpose is to affect educational institutions which have their [sic] main offices and branches out-of-state. Those things which this statute attempts to protect Oregon citizens from can just as easily be caused by existing in-state institutions. This statute puts an additional

---

[1] Article I, section 8, clause 3, of the United States Constitution provides that Congress shall have the power "[t]o regulate Commerce * * * among the several States[.]"

burden upon the plaintiff herein in continuing to have their programs offered in the [S]tate of Oregon. Based upon the testimony offered, and this Court's purview of the administrative rules, there is no doubt but that they are a substantial and additional burden to out-of-state schools which are not required of in-state institutions. This statute is not neutral and, therefore, this Court will, under the interstate commerce clause, rule it unconstitutional."

■    In *Lewis v. BT Investment Managers, Inc.*, 447 US 27, 36, 100 S Ct 2009, 2015, 64 L Ed 2d 702 (1980), the Supreme Court pointed out that the limitation on state regulatory power imposed by the Commerce Clause "is by no means absolute" and the "[s]tates retain authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected." The Court has defined two classes of state statutes that burden interstate transactions. In the first group are statutes that burden interstate commerce incidently. Such statutes violate the Commerce Clause only if the burdens they impose on interstate trade are "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 US 137, 142, 90 S Ct 844, 847, 25 L Ed 2d 174 (1970). In the second group are statutes that discriminate against interstate commerce on their face. Those statutes violate the Commerce Clause unless the state demonstrates that (1) "the statute 'serves a legitimate local purpose' and [(2)] that this purpose could not be served as well by available non-discriminatory means." *Maine v. Taylor*, 477 US 131, 138, 106 S Ct 2440, 2447, 91 L Ed 2d 110 (1986) (quoting *Hughes v. Oklahoma*, 441 US 322, 336, 99 S Ct 1727, 1736, 60 L Ed 2d 250 (1979)). The purpose of the statutory scheme of ORS 348.830 to ORS 348.885 is expressed in ORS 348.830:

"It is the purpose of ORS 348.830 to 348.885 to provide for the protection, education and welfare of the citizens of this state, its educational institutions and its students. The Oregon Office of Educational Policy and Planning shall adopt by rule minimum standards concerning quality of education, ethical and business practices, health and safety and fiscal responsibility, and protecting against substandard, transient, unethical, deceptive or fraudulent practices. The standards shall apply to schools and institutions subject to ORS 348.835 and shall be developed in consultation with an appropriate agency."

ORS 348.835 subjects academic degree programs offered in Oregon to regulation by the Office of Educational Policy and Planning (OEPP). ORS 348.835(2)(c) provides that Oregon schools and colleges that are members in good standing of the Northwest Association of Schools and Colleges (NASC) are exempt from the certification requirements that non-Oregon schools and colleges must meet in order to conduct business in Oregon regardless of whether they are members of NASC.

OEPP is a state agency created under ORS 348.715. Its function is to review and evaluate post-secondary programs and to propose new post-secondary locations consistent with statewide policy and program objectives. *See* ORS 348.715(4)(d). In addition, OEPP approves new degree programs offered in Oregon until they are accredited by NASC. NASC conducts accrediting activities in seven northwestern states under the auspices of the Council on Post-Secondary Accreditation and the U. S. Secretary of Education. Its standards do not differentiate between schools located in one state and those in another state. It accredits an institution as a whole and not on a site-by-site basis. Branch campus locations are called "secondary sites."

Plaintiff is a nonprofit Washington corporation that operates a privately owned university. Its administrative headquarters are based in Washington and one of its branch campus facilities is located in Tigard. Plaintiff was accredited in 1978 by NASC, and its accreditation was renewed in 1990. The record indicates that plaintiff began offering courses in Tigard in 1977.

Until new degree programs are fully accredited by NASC, OEPP applies the same review criteria to Oregon schools and non-Oregon schools with secondary sites in Oregon. It reviews on a three-year cycle. Accreditation by NASC ordinarily takes approximately six years. After NASC accreditation, OEPP continues to review the secondary sites of non-Oregon schools every three years, but pursuant to ORS 348.835(2)(c), it is not required to review under ORS 348.830 to ORS 348.885 Oregon schools that are in good standing with NASC. According to a witness, Oregon schools are subject to a different set of controls, and OEPP continues to work with other agencies to remedy educational deficiencies

in Oregon schools' programs. Once accreditation occurs, NASC rules require that an institution be reviewed every five years.

■      It is clear that the statute discriminates against non-Oregon schools on its face, because it requires them to comply with accreditation requirements that are not imposed on Oregon schools. However, that fact alone does not mean that the statute impermissibly interferes with interstate commerce. A statute that discriminates against interstate commerce may be constitutional if it serves a legitimate local purpose and the purpose cannot be served as well by available nondiscriminatory means. *See, e.g., Maine v. Taylor, supra.*[2]

■      One of the ways to determine whether the statute serves a legitimate local purpose is to look at the express purpose of the statute and the underlying legislative history. The bill that resulted in ORS 348.835(2)(c) was sponsored by the Committee on Education at the request of OEPP. The problem that the sponsor wished to address with the bill was that out-of-state institutions, although accredited by NASC, were not under the degree granting authority of OEPP and, therefore, were not subject to its review. The sponsor believed that all educational institutions offering degrees within the state should be scrutinized. A witness explained:

> "We can review the program they're offering in Oregon and assure that it is of equivalent quality to the same kinds of programs that our Oregon public institutions and Oregon private institutions may be offering." Minutes, House Education Committee, May 18, 1979, p 3.

Another witness testified:

> "Without some kind of check on an institution, the Commission has no idea as to the extent of their offerings, the kind of physical facilities they're in, what kind of instructors they're using, what kind of library services they're able to

---

[2] In *Maine v. Taylor, supra*, the Court upheld the constitutionality of a Maine statute that prohibited the importation of live bait fish into Maine, on the basis that the statute served a legitimate local purpose and that the purpose could not be served as well by available nondiscriminatory means. Taylor, a Maine resident, arranged to have 158,000 live golden shiners, a species of minnow, delivered to him from outside the state. He was charged with violation of a federal law that made it unlawful to import fish in violation of a state law. The Supreme Court concluded that Maine's import ban discriminated against interstate trade on its face, but not impermissibly.

provide." Minutes, House Education Committee, May 18, 1979, p 4.

Another witness testified that the lack of state supervision was a national problem and cited examples of a Colorado school that was offering Doctor of Education degrees in Oregon, which could be obtained by spending less than a week at the Colorado campus. In her experience, she had encountered several examples of multiple course offerings in states from otherwise accredited institutions in other states that lacked in-state faculty. The executive director of the Independent Colleges Association of Oregon testified that the bill would fill a loophole in the existing law, and would provide protection for Oregon students. Here, even when one looks beyond the legislature's characterization of the need for the statute, it is clear that ORS 348.835(2)(c) was enacted to protect Oregon consumers from the effects of substandard, transient, unethical, deceptive or fraudulent practices by out-of-state educational institutions, and that it meets the "legitimate local purpose" requirement.

The burden is on defendants to offer evidence that the purpose cannot be served as well by available non-discriminatory means. Defendants argue that the trial court prevented them from offering evidence on the issue when it sustained objections made by plaintiff at trial on the basis of the lack of relevancy. Any evidence having a tendency to make it more likely that the statute serves a legitimate local purpose and that the purpose could not be served as well by available nondiscriminatory means was relevant. *See* OEC 401; OEC 403. However, the trial court did permit defendants to make offers of proof. The evidence offered through the offers of proof was relevant and admissible, and therefore we consider it in determining the issue.

The evidence offered by defendants through their offers of proof is insufficient to carry their burden in this regard. Although defendants suggested, in their opening statements and in their argument to the court, that the NASC accreditation policies were inadequate because they did not provide for review on as frequent a basis as does the statute and because they did not provide for visitation of facilities located in Oregon, they proffered no evidence that those deficiencies could not be remedied by statutes or rules

that were nondiscriminatory. In the light of the inadequacy of defendants' evidence, the trial court did not err in holding that ORS 348.835(2)(c) is unconstitutional.

■ Finally, defendants assign error to the court's remedy. They argue that ORS 348.835(2)(c) should be invalidated in its entirety, rather than simply severing the word "Oregon" from the provision. If defendants are correct, then plaintiff will continue to be regulated by OEPP. If they are incorrect, then plaintiff is exempt from regulations under ORS 348.830 to ORS 348.885. A statute as a whole need not be invalidated if those portions that have been found unconstitutional are severable from what remains. The severability of unconstitutional portions of a statute is governed by ORS 174.040, which provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

Nothing in the text of ORS 348.835 provides that, if any part of that statute were held to be unconstitutional, the remaining parts should not remain in force. *See* ORS 174.040(1). ORS 348.830 *et seq* expresses the public interest in regulating educational institutions operating in Oregon. As the legislative history demonstrates, ORS 348.835(2)(c) was enacted with the express intention of regulating non-Oregon schools but exempting certain Oregon schools. To sever the word "Oregon" from the statutory exemption would result in non-Oregon schools being exempt from regulation, contrary to the express intention of the legislature. The word "Oregon" is not only inseparably related to the remaining language in ORS 348.835(2)(c); its addition was the reason for the 1979 amendment to the subsection. Under these circumstances, ORS 174.040 does not permit us to

sever it from the statute in order to render it constitutional. Defendants are correct that ORS 348.835(2)(c) must be invalidated in its entirety.

Defendants' other assignments of error do not require discussion.

Judgment modified to declare ORS 348.835(2)(c) unconstitutional in its entirety; otherwise affirmed.

**De MUNIZ, J.,** concurring in part, dissenting in part.

For the reasons set forth below, I concur with the majority's decision to affirm the trial court's ruling that ORS 348.835(2)(c) violates the Commerce Clause of the United States Constitution. However, because I believe that the trial court also correctly severed the word "Oregon" from the statute, I respectfully dissent.

ORS 348.835 provides:

"(1)   No school or other institution of learning shall confer or offer to confer any degree upon any person, in recognition of the attainment or proficiency of such person, in pursuing or graduating from any course conducted by it, without first having submitted the requirements for such degree to the Oregon Office of Educational Policy and Planning [OEPP] and having obtained the approval of the director.

"(2)   *ORS 348.830 to 348.885 shall not apply to*:

"(a)   Any school or institution of learning which has been established and conducted within this state, and has conferred degrees for a period of 15 years prior to March 4, 1935;

"(b)   Any school conducted under the public educational system of the state;

"(c)   Any *Oregon*[1] school which is a member in good standing of the Northwest Association of Schools and Colleges; or

---

[1] An "Oregon school" is a school that has its principal executive offices in Oregon, provides instruction to more full-time-equivalent students in Oregon than in any other state, vests final authority over school matters in persons a majority of whom are permanent Oregon residents, and has authority to make governance decisions that are not subject to persons or organizations outside the state. OAR 583-30-015(5).

"(d) Schools of theology operating on a post-bacca-laureate degree level." (Emphasis supplied.)

Although plaintiff's privately owned university is accredited in Washington by the Northwest Association of Schools and Colleges (NASC), its status as a non-Oregon school prevents it from meeting the exemption requirements of ORS 348.830(2)(c), above. As a result, it is required to obtain approval of its degree requirements by complying with OEPP rules that establish standards for, among other things, the school's name, purpose, governance, organizational structure, administrators, teachers, curriculum, credits, admissions, student services, publications, advertisements, records, library facilities, finances, fees, refunds and evaluations. OAR 583-30-035.[2]

The questions on appeal are whether ORS 348.835(2)(c) on its face violates the Commerce Clause, and, if so, whether the trial court properly remedied the problem when it severed the word "Oregon" from the statute.[3] For the following reasons, I would answer both questions in the affirmative.

Although the Commerce Clause refers only to the power of the United States Congress to regulate commerce

---

[2] In addition, OAR 583-30-035(23) provides:

"Notwithstanding the absence of a specific standard or prohibition in this rule, no school authorized to offer academic degrees or seeking to qualify for such authorization shall engage in any practice that the Office considers in its discretion to be fraudulent, dishonest, unethical, unsafe, exploitive, deceptive, transient, irresponsible, or inequitable, so as to be harmful or unfair to persons with whom it deals. A school that appears to be so engaged will be given opportunity to present evidence to the contrary."

[3] The court wrote:

"[ORS 348.835(2)(c)] is clearly not a neutral statute. It is a discriminatory statute whose purpose is to affect educational institutions which have their main offices and branches out-of-state. Those things which this statute attempts to protect Oregon citizens from can just as easily be caused by existing in-state institutions. This statute puts an additional burden upon the plaintiff herein in continuing to have their [sic] programs offered in the [S]tate of Oregon. Based upon the testimony offered, and this Court's purview of the administrative rules, there is no doubt but that they are a substantial and additional burden to out-of-state schools which are not required of in-state institutions. This statute is not neutral and, therefore, this Court will, under the interstate commerce clause, rule it unconstitutional.

"Since this matter has been dealt with under the interstate commerce clause I will not go any further and deal with equal protection or freedom of speech."

among the states, *see* n 1, *supra*, it has been interpreted to limit the power of states to discriminate against interstate trade. *Wyoming v. Oklahoma*, 502 US ____, 112 S Ct 789, 117 L Ed 2d 1, 22 (1992); *Lewis v. BT Investment Managers, Inc.*, 447 US 27, 35, 100 S Ct 2009, 64 L Ed 2d 702 (1980). The general rule is that, if a state law

> "clearly discriminates against interstate commerce, it will be struck down * * * unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism[.]" *Wyoming v. Oklahoma, supra*, 502 US at ____, 112 S Ct at 800, 117 L Ed 2d at 22.[4]

On the other hand, if a state law does not clearly discriminate, but instead

> "*regulates evenhandedly* to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 US 137, 142, 90 S Ct 844, 25 L Ed 2d 174 (1970). (Citation omitted; emphasis supplied.)

*See Hass v. Oregon State Bar*, 883 F2d 1453, 1462 (9th Cir 1989), *cert den* 494 US 1081 (1990) (stating both rules).

Plaintiff's activities clearly constitute "interstate commerce." Its operation of the Oregon-based facility necessarily involves communication between Oregon and Washington. Also, information regarding registration, student financial aid, curriculum review, testing and measurement crosses the Oregon-Washington border. Students, faculty and administrators move back and forth between the two states, as does money.[5] In sum, plaintiff's educational activities involve the flow of people, money and information between the two states. That is sufficient to establish that plaintiff is engaged in interstate commerce. *See U.S. v. Underwriters Ass'n*, 322 US 533, 549-50, 64 S Ct 1162, 88 L Ed 1440 (1944) (transactions may be commerce even though they do not concern "the flow of anything more tangible than

---

[4] *See, e.g., New Energy Co. of Indiana v. Limbach*, 486 US 269, 274, 108 S Ct 1803, 100 L Ed 2d 302 (1988); *Maine v. Taylor*, 477 US 131, 106 S Ct 2440, 91 L Ed 2d 110 (1986).

[5] City University alleges that, since 1982, it has spent more than $2.6 million in Oregon.

electrons and information"); *see also International Textbook Co. v. Pigg*, 217 US 91, 30 S Ct 481, 54 L Ed 678 (1910) (correspondence courses offered through the mail are a type of commerce).

The next question is whether ORS 348.835(2)(c) discriminates against interstate commerce or whether it "regulates evenhandedly." *Pike v. Bruce Church, Inc., supra; Wyoming v. Oklahoma, supra.* There can be no question that the statute is facially discriminatory. Until 1979, ORS 348.835(2)(c) exempted *all* NASC-accredited schools from the requirement of obtaining OEPP authorization for their degree programs. In 1979, the word "Oregon" was added to the statute. Or Laws 1979, ch 308, § 3. That amendment gave rise to the current situation in which only *Oregon* schools are allowed to avoid expending the effort required to secure continuous OEPP approval of their degree requirements. By placing on non-Oregon NASC-accredited schools the burden of meeting OEPP's requirements,[6] while exempting identically accredited Oregon schools from that requirement, out-of-state schools are disadvantaged and in-state schools are given favorable treatment. By definition, that is discrimination.

When, as here, a state law discriminates against interstate commerce

" 'either on its face or in practical effect,' the burden falls on the State to demonstrate both that the statute 'serves a legitimate local purpose,' and that this purpose could not be served as well by available nondiscriminatory means." *Maine v. Taylor*, 477 US 131, 138, 106 S Ct 2440, 91 L Ed 2d 110, (1986) (quoting *Hughes v. Oklahoma*, 441 US 322, 336, 99 S Ct 1727, 60 L Ed 2d 250 (1979)).

A statute does not serve a legitimate local purpose when it protects citizens against fraudulent or substandard *out-of-state* institutions, but allows them to be subjected to similarly substandard or fraudulent programs offered by in-state institutions.[7] The statute's incongruity, which lies in its implication that NASC accreditation is an adequate assurance of

---

[6] The state contends that, although NASC-accredited Oregon schools are not subject to formal OEPP regulation, they are subject to informal "regulation" in the form of "moral suasion." We reject the suggestion that the burden, if any, that is occasioned by moral suasion is comparable to legal compulsion.

[7] The trial court opined that the presence of poor quality programs is a problem

quality for Oregon schools, but is inadequate for ensuring the quality of non-Oregon schools, renders this case analogous to *Lewis v. BT Investment Managers, Inc., supra,* in which the court wrote:

> "Appellant has demonstrated no basis for an inference that all out-of-state bank holding companies are likely to possess the evils of monopoly power, that they are more likely to do so than their homegrown counterparts, or that they are any more inclined to engage in sharp practices than bank holding companies that are locally based." 447 US at 43.

As noted above, the test for facially discriminatory statutes has two parts. Even if the majority of this court chooses to hold that protecting students from some, but not all, of the relevant educational institutions "serves a legitimate local purpose," the statute's inherent double standard requires that we reject the state's argument that the purpose of the statute "could not be served as well by available nondiscriminatory means." *Maine v. Taylor, supra,* 477 US at 138. The history of the statute itself shows that the obvious and "available nondiscriminatory means" to achieve its purpose is to subject *all* schools to the same certification requirements, as the statute required prior to 1979.

In sum, I would hold that ORS 348.835(2)(c) impermissibly discriminates against interstate commerce, in violation of the Commerce Clause, for reasons beyond the one articulated by the majority.

The remaining question is whether the unconstitutional provision is severable. The trial court concluded that, by deleting "Oregon" from subsection (2)(c), the remainder of the subsection could stand. The effect of that deletion is to remove the distinction between Oregon and non-Oregon schools and to render *all* NASC-accredited schools exempt from OEPP regulation. In short, it returns the statute to its pre-amended form.

The state objects to that remedy and submits that, if found unconstitutional, ORS 348.835(2)(c) should be invalidated in its entirety. Its primary argument is that exempting

---

that "can just as easily be caused by existing in-state institutions" as by out-of-state institutions.

all NASC-accredited schools is contrary to the 1979 Legislature's clear intent to, at the very least, regulate out-of-state schools that offer degree programs in Oregon.

Decisions regarding severability are governed by ORS 174.040, which provides:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

*See Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 108, 849 P2d 500, *cert granted* ____ US ____, 114 S Ct 38, 125 L Ed 2d 787 (1993). The question is what, if any, portion of ORS 348.835 is severable. Because of the constitutional constraints discussed above, in my view, the statute must exempt either all or none of the NASC-accredited schools that operate in Oregon and must not discriminate on the basis of a school's geographical origin.

The statute does not contain a non-severability clause, and subsections (1), (2)(a), (2)(b) and (2)(d) are not "inseparably connected with and dependent upon" subsection (2)(c). Without (2)(c), the remainder of the statute can stand alone. Thus, one approach would be to sever the entire subsection. The other approach, taken by the trial court, was to delete only the word "Oregon" and to leave intact the remainder of (2)(c). The sentence would then be identical to *former* subsection (2)(c) as it stood before the 1979 Legislature added the word "Oregon." That result also meets the criteria of ORS 174.040, because the remainder of the subsection can and did stand alone prior to 1979. In deciding whether to delete one word or to delete subsection (2)(c) in its entirety, a court is guided by the rule that statutory provisions should be severed only if the challenged portion can be

removed "without doing violence to the intent of the legislature." *Pavlicek v. S.I.A.C.*, 235 Or 490, 494, 385 P2d 159 (1963).

The legislative history of Senate Bill 801, which added the word "Oregon" to ORS 348.835(2)(c), shows that the 1979 Legislature amended subsection (2)(c) because it was concerned about the state's inability to regulate the quality of courses being offered by out-of-state institutions. The history suggests that the legislature sought to "expand" and "extend" the degree-approving authority of the Oregon Educational Coordinating Commission, which was the predecessor to OEPP, in order to remedy a situation in which there were "insufficient controls on out-of-state schools that offer courses and degrees in the State of Oregon." Minutes, Senate Committee on Education (April 12, 1979 – SB 801, Exhibit A); Minutes, House Education Committee (May 18, 1979 – Staff Measure Analysis of SB 801). The amendment itself evinces the legislature's intent to subject out-of-state NASC-accredited institutions to formal OEPP regulation. Deletion of the word "Oregon" would remove non-Oregon schools from OEPP regulation and, in so doing, would achieve a result that is contrary to the legislature's interest in extending OEPP authority over out-of-state schools operating in Oregon.

On the other hand, deletion of the entire subsection, as urged by the state, also would fail to effectuate the legislature's goal of exempting NASC-accredited *Oregon* schools from OEPP regulation. Severing (2)(c) in its entirety would have the effect of subjecting those schools to the requirement that they obtain OEPP approval before conferring degrees. The history of ORS 348.835(2)(c) shows that the legislature has continuously exempted NASC-accredited Oregon schools from regulation since 1935, when the statute was enacted. Or Laws 1935, ch 165, § 1. By adding the word "Oregon" in 1979, that exemption was expressly reaffirmed. Therefore, to sever the statute in the manner sought by the state would accomplish the legislature's goal of regulating out-of-state schools, but would contradict its goal of retaining the exemption status that is provided to NASC-accredited Oregon schools.

In sum, the amended statute serves a dual purpose. Either form of severance – limited or wholesale – will give

effect to one, but never both, purposes. That fact places us in the unenviable position of discerning what the legislature would have done if it had known that its goal of regulating non-Oregon schools could not be achieved in the manner utilized by its 1979 amendment to ORS 348.835(2)(c). Which purpose weighs heavier in the legislature's mind: exempting Oregon schools or regulating non-Oregon schools?

The statute's history reveals 58 uninterrupted years of exemption for Oregon schools. The legislature also allowed 44 years of exemption for non-Oregon schools, but, for the last 14 years, has required OEPP regulation of those schools. As noted above, retaining the exemption for Oregon schools is constitutionally permissible only if *all* NASC-approved schools, regardless of origin, are likewise exempted. That would be accomplished by deleting the word "Oregon" from ORS 348.835(2)(c). On the other hand, severing (2)(c) in its entirety — which would remove the exemption for Oregon schools and in that manner equalize the treatment accorded to NASC-approved schools — would for the first time subject Oregon schools to an intensive regulation process which heretofore they have been allowed to avoid.

Given the longstanding nature of the Oregon school exemption, and its express retention in 1979, I would conclude that the legislature would not have sacrificed that exemption for the sake of regulating *all* NASC-accredited schools. Moreover, to sever the statute in such a way as to eliminate the exemption for Oregon schools would be the equivalent of a judicial grant of authority to OEPP to regulate those schools. That is a wider scope of authority than the legislature itself has delegated to OEPP, and it is not within our province to so delegate. Accordingly, I would affirm the trial court's decision to sever the word "Oregon" from subsection (2)(c) and return the statute to its pre-amended form in which both Oregon and non-Oregon NASC-accredited schools are exempt from OEPP regulation.

Rossman, Durham and Leeson, JJ., join in this dissent.