Received and submitted on remand from the Unites States Supreme Court May 10, decision of the Court of Appeals affirmed in part and reversed in part June 30, reconsideration denied September 20, 1994

## GILLIAM COUNTY, OREGON,
### and Oregon Waste Systems, Inc.,
*Petitioners on Review,*

*v.*

## DEPARTMENT OF ENVIRONMENTAL QUALITY OF THE STATE OF OREGON,
*Respondent on Review.*

(DEQ 45-1990; CA A68441 (Control); SC S39659; USSC 93-70)

## COLUMBIA RESOURCE COMPANY, L.P.,
### a Washington Limited Partnership,
*Petitioner on Review,*

*v.*

## ENVIRONMENTAL QUALITY COMMISSION,
*Respondent on Review.*

(CA A68455; SC S39658; USSC 93-108)
(Cases Consolidated)

876 P2d 749

John DiLorenzo and Michael E. Farnell, of O'Connell, Goyak & DiLorenzo, Portland, for petitioner on review Columbia Resource Company, L.P.

J. Laurence Cable and James E. Benedict, of Cable, Huston, Benedict, Haagensen & Ferris, Portland, for petitioner on review Oregon Waste Systems, Inc. James M. Coleman, of O'Donnell, Ramis, Crew & Corrigan, Portland, for petitioner on review Gilliam County, Oregon.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Robert M. Atkinson, Assistant Attorney General, Salem, for respondents on review.

GRABER, J.

Fadeley, J., filed a specially concurring opinion in which Unis, J., joined.

## GRABER, J.

This case is before us on remand from the Supreme Court of the United States. *Oregon Waste Systems v. Dept. of Env. Quality*, 511 US ___, 114 S Ct 1345, 128 L Ed 2d 13 (1994).

On judicial review pursuant to ORS 183.400,[1] this court considered the validity of ORS 459.297, ORS 459.298, *former* OAR 340-61-115(1), and *former* OAR 340-61-120(6),[2] providing for the imposition of a per-ton surcharge on the disposal in Oregon of solid waste generated outside the state. *Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 849 P2d 500 (1993).[3] This court first held that *former* OAR 340-61-115(1) and *former* OAR 340-61-120(6) are not invalid under ORS 183.400(4)(b), because those rules do not exceed the statutory authority of the promulgating agency, the Environmental Quality Commission. 316 Or at 106-07. This court next held that certain portions of ORS 459.298 are unconstitutional under Article IV, section 25, and Article V, section 15b, of the Oregon Constitution. *Id.* at 107-08. This court held, however, that those portions of the statute are severable and that the remaining portions of the statute shall remain in force. *Id.* at 108-10. Finally, this court held that ORS 459.297, the remaining portions of ORS 459.298, *former* OAR 340-61-115(1) and *former* OAR 340-61-120(6) do not violate the Commerce Clause, Article I, section 8, clause 3, of the Constitution of the United States.[4] *Id.* at 110-13.

On *certiorari*, the Supreme Court of the United States held that the surcharge provided in *former* OAR 340-61-115(1) and *former* OAR 340-61-120(6) discriminates

---

[1] ORS 183.400 provides for judicial review of agency rules and states in part:

"(4) The court shall declare the rule invalid only if it finds that the rule:

"(a) Violates constitutional provisions; [or]

"(b) Exceeds the statutory authority of the agency."

[2] After this court issued its prior opinion, the pertinent administrative rules were renumbered. *Former* OAR 340-61-115 has been renumbered to OAR 340-97-110, and *former* OAR 340-61-120 has been renumbered to OAR 340-97-120.

[3] The texts of the relevant statutes and rules are set forth in *Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 102-03, 849 P2d 500 (1993).

[4] Article I, section 8, clause 3, of the Constitution of the United States, provides:

"The Congress shall have Power * * * To regulate Commerce * * * among the several States[.]"

against interstate commerce, *Oregon Waste Systems v. Dept. of Env. Quality, supra,* 114 S Ct at 1350, is not justified as a compensatory tax, *id.* at 1351-53, and constitutes impermissible protectionism, *id.* at 1353-54. Accordingly, the Court held:

> "Because respondents have offered no legitimate reason to subject waste generated in other States to a discriminatory surcharge approximately three times as high as that imposed on waste generated in Oregon, the surcharge is facially invalid under the negative Commerce Clause." *Id.* at 1355.

The Court reversed the judgment of this court and remanded the case for further proceedings. *Ibid.*

On remand, the validity of our prior holdings under Oregon law is not at issue. We now hold, however, that, insofar as ORS 459.297, ORS 459.298, *former* OAR 340-61-115(1), and *former* OAR 340-61-120(6) provide for the imposition of a per-ton surcharge on disposal in Oregon of solid waste generated outside the state, those statutes and rules are invalid under Article I, section 8, clause 3, of the Constitution of the United States. Taken together with our earlier decision, the result is that ORS 459.297, ORS 459.298, and *former* OAR 340-61-120(6) are invalid in their entirety, and *former* OAR 340-61-115(1) is invalid insofar as it provides for a surchage on disposal in Oregon of solid waste generated outside the state.

The decision of the Court of Appeals, *Gilliam County v. Dept. of Environmental Quality,* 114 Or App 369, 837 P2d 965 (1992), is affirmed in part and reversed in part. ORS 459.297, ORS 459.298, and *former* OAR 340-61-120(6) are invalid, and *former* OAR 340-61-115(1) is invalid to the extent described.

**FADELEY, J.,** specially concurring.

In this case, the Supreme Court of the United States has held that a state legislative act[1] and certain rules authorized by that act did not honor the federal Commerce Clause

---

[1] ORS 459.298 provides:

"Subject to approval by the Joint Committee on Ways and Means during the legislative sessions or the Emergency Board during the interim between sessions, the Environmental Quality Commission shall establish by rule the amount of the surcharge to be collected under ORS 459.297. The amount of the surcharge shall be based on the costs to the State of Oregon and its political

and are therefore invalid as a federal constitutional matter. I concur with that portion of the lead opinion that holds that the substantive portion of that statute and those rules are void.

I do not join that portion of the lead opinion that treats the question of validity of a process — described in the constitutionally invalid statute as the process for adopting the constitutionally invalid rules — as if it were still a live or pending question. The procedure for implementing the subject of the unconstitutional statute through Emergency Board approval does not — cannot — exist separately from the substantive portion of the statute. But the substantive portion has been declared void because constitutionally invalid and, therefore, the substantive portion is no longer in existence. Although a substantive provision may perhaps exist as law even though there is no procedure for implementing it, a solely procedural provision is a nullity without any substance to which it ever can be applied. There is nothing before this court concerning that nullity on which any holding regarding it may be founded.

In this court's original decision (held erroneous by the Supreme Court of the United States), the ruling concerning the legislative Emergency Board's powers was expressly based on the *concession* of the executive department attorney (Attorney General) representing an executive department agency (the Department of Environmental Quality). *Gilliam County v. Dept. of Environmental Quality*, 316 Or 99, 105, 107, 849 P2d 500 (1993) (stating and restating the concession at the pages cited). Neither the legislature nor the Emergency Board was named a party to this action. Neither the legislature nor the Emergency Board was represented in *Gilliam County v. Dept. of Environmental Quality, supra,* by the executive department attorney who made the "concession" limiting both the legislature and the Emergency Board, which have not been heard in any stage of this case. Accordingly, this court cannot, consonant with due process or due

_____

subdivisions of disposing of solid waste generated out-of-state which are not otherwise paid for under the provisions of [statutes relating to solid waste disposal, domestic solid waste disposal, and household hazardous waste disposal]. These costs may include but need not be limited to costs incurred for [listing categories of future expenses that the amount of surcharge on out-of-state waste was required to cover.]"

course of law, affect the rights of those who are not parties herein.[2] I cannot join in the lead opinion that suggests otherwise.

Moreover, if there were a party in this case defending the rights of the Emergency Board, that party would, perhaps, rely on a state constitutional amendment that the lead opinion neither considers nor discusses and which was neither examined in the reasoning nor explicitly detailed in the court's original opinion. The people, by statewide vote amending the constitution in 1952, created Article III, section 3(1)(c), which authorizes the Emergency Board "to approve, or revise and approve, a budget of the money appropriated for" a "new activity coming into existence at such a time as to preclude the possibility of submitting a budget to the Legislative Assembly for approval." *See* Lamb, *The Emergency Board: Oregon's System of Interim Fiscal Adjustment*, 55 Or L Rev 197 (1976) (discussing the constitutional change).[3] On its face, that constitutional authorization could fit the new activity of accepting toxic waste generated in other states and of establishing the dollar amount of fees to be charged for the new activity in order to fund the new personnel and other budget costs for that activity. Setting a level or amount of fee income to fund the budget is, arguably, directly related to the "budget" for the new activity that is to come into existence only after adjournment of the legislative session that enacted the statute that authorized

---

[2] *See Astleford v. SAIF*, 319 Or 225, 229, 234, 874 P2d 1329 (1994) (holding that a disputed claim settlement agreement entered into without participation by an affected "party" must be vacated for that reason).

[3] The Oregon Constitution, Article III, sections 2 and 3, both adopted by the voters in 1952, in part provide:

"Section 2. The Legislative Assembly shall have power to establish an agency to exercise budgetary control over all executive and administrative state officers, departments, boards, commissions and agencies of the State Government."

"Section 3. (1) The Legislative Assembly is authorized to establish by law a joint committee composed of members of both houses of the Legislative Assembly, the membership to be as fixed by law, which committee may exercise, during the interim between sessions of the Legislative Assembly, such of the following powers as may be conferred upon it by law:

"* * * * *

"(c) In the case of a new activity coming into existence at such a time as to preclude the possibility of submitting a budget to the Legislative Assembly for approval, to approve, or revise and approve, a budget of the money appropriated for such new activity."

the imposition of fees but which left the amount of the fees unspecified. However, we do not have the benefit of briefing or argument on any constitutional challenge raised in an adversarial case. There was no party present in any stage of this case to make that argument or other arguments that might have been made. We are not adequately advised to rule on the merits.

I do not concur in considering in this case, let alone declaring unconstitutional on the merits, a constitutional provision relating to the powers of a non-party agency of government where there is no longer an issue in the case to which that ruling may adhere.

Unis, J., joins in this specially concurring opinion.