STATE of Missouri ex rel. CITY OF CABOOL, et al., Appellants,

v.

TEXAS COUNTY BOARD OF EQUALIZATION, et al., Respondents.

No. 75110.

Supreme Court of Missouri, En Banc.

March 23, 1993.

Rehearing Denied April 20, 1993.

Thomas C. Cline, Gainesville, for appellants.

Steven H. Akre, Robert J. Benbenek, St. Louis, for respondents.

HOLSTEIN, Judge.

Relators City of Cabool and Cabool Schools R–4 appeal the denial of a writ of mandamus. They sought to compel the Assessor and Board of Equalization of Texas County to not apportion the assessment on certain trucks until such time as the owners of the trucks produced sufficient proof that those trucks have acquired a tax situs in another state. Because the case involves the construction of the revenue laws of this state, this Court has jurisdiction. *Mo. Const. art. V, § 3.* The judgment is affirmed.

■ The county assessor must annually make a list of all real and personal property in his county and assess all personal property at thirty-three and one-third percent of its true value in money. Section *137.115.1(1).*[1] The parties concede that superimposed on this statutory duty is the constitutional duty not to levy an unapportioned ad valorem tax where another state has constitutional authority to levy such a tax. *Peabody Coal Co. v. State Tax Comm'n,* 731 S.W.2d 837, 838 (Mo. banc), *cert. denied,* 484 U.S. 960, 108 S.Ct. 446, 98 L.Ed.2d 386 (1987).

In 1990 the Texas County assessor reduced the assessment on certain trucks used in interstate commerce by apportionment. To do this, the assessor obtained a copy of a document from the Missouri Highway Reciprocity Commission [2] that indicated the number of miles driven by a given truck and the number of those miles driven in Missouri. The assessor then apportioned the taxes according to the percentage of miles driven in Missouri to total miles driven. This procedure was in accordance with the recommendations of the State Tax Commission.[3]

Relators sought to have the Texas County Board of Equalization increase the assessment of two trucking companies, Cabool Lease and Mid–America Dairymen, to the original unapportioned assessment. The motion by relators before the board of equalization was denied. This decision was appealed to the Texas County Board of Appeals, where it was also denied.

Relators then filed this mandamus action to compel the assessor to assess at thirty-three and one-third percent of true value and not to apportion the trucks' assessments based only on the information provided in the Reciprocity Commission listing. After a hearing, the trial court found that the "issues raised by relators ... relate to discretionary acts performed by the respondents in their official capacity." Relief was denied.

■ Initially, respondents argue that relators lack standing to pursue this mandamus action. The bases for respondents' assertion are this Court's holdings in *State ex rel. St. Francois County School Dist. v. Lalumondier,* 518 S.W.2d 638 (Mo.1975), and *City of Richmond Heights v. Board of Equalization,* 586 S.W.2d 338 (Mo. banc 1979). These cases held that neither a city nor a school district has standing to appeal, or seek review by certiorari of, an assessment by a board of equalization. The rationale for these decisions was that the legislature has provided a procedure for reviewing assessments and it made no provision for political subdivisions to challenge assessments. "No doubt such was originally omitted on the theory that public officials would adequately protect the interest of

---

1. All references to statutes are to RSMo 1986, unless specified otherwise.

2. This body is created by statute and is authorized to enter into agreements with other states for the apportionment of certain fees and license taxes based on the miles traveled on other states' highways or other equitable basis. Section *301.277.1.* The personal property tax is not mentioned.

3. This recommendation was apparently given pursuant to §§ 138.320 and 138.410.1, giving the state tax commission the duty to give "its opinion and advice on all questions of doubt" regarding the equalization and review of tax assessments.

the state and its subdivisions." *Lalumondier* at 643. To permit political subdivisions to intercede would violate the legislative purpose.

■ Nevertheless, a narrow window exists by which even a member of the general public may seek mandamus against a public official. "The principle at the heart of [the writ of mandamus] is that public officers are required to perform ministerial duties without any request or demand, and the entire public has the right to that performance." *State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992). Thus, where the duty sought to be enforced is a simple, definite ministerial duty imposed by law, the threshold for standing is extremely low. *Id.* The initial question for determination is whether apportionment of ad valorem property taxes on trucks used in interstate commerce is a simple, definite ministerial act imposed by law.

■ We conclude that apportionment of property taxes is not a simple and definite ministerial act but is a complex process involving variable factors to determine when apportionment is required and the extent of such apportionment. The brief discussion of the apportionment process that follows makes the complexity apparent.

■ Missouri is constitutionally "precluded from imposing an ad valorem tax on any property to the extent that it *could* be taxed by another state." *Central R.R. Co. v. Commonwealth of Pa.*, 370 U.S. 607, 614, 82 S.Ct. 1297, 1303, 8 L.Ed.2d 720 (1962) (emphasis in original). If a "possible tax situs" exists in another jurisdiction, Missouri's property tax must be reduced by some "fair apportioning formula." *Id.* If the property is physically present in another state and if the property is "deriving substantial opportunities, benefits and protection [from that other state] by habitual or continuous use" there, tax situs is established. *Bi Go Markets, Inc. v. Morton*, 843 S.W.2d 916, 920 (Mo. banc 1992). A number of variables play a role in determining possible tax situs. Tax situs determination may include consideration of how long a

vehicle is in a state, its use in a state, and the regularity of the routes traveled in a state. *See Central R.R. Co. v. Commonwealth of Pa.*, 370 U.S. at 614–15, 82 S.Ct. at 1302–03. Apportionment is not the mere application of an arithmetic formula. No definitive test for determining whether there is a possible tax situs elsewhere and making a fair apportionment of the taxes is found in the statutes, the constitution, or caselaw. The fact that the respondents have resorted to the expediency of making their apportionment decision based on reciprocity commission reports does not mean the apportionment is any less complex. In sum, apportionment is not a simple, definite ministerial duty imposed by law.

■ Relators are not attempting to force the assessment of property that has not been assessed. What relators attempt to do here is challenge the sufficiency of the evidence relied on to apportion taxes. The legislature has provided a procedure to challenge tax assessments where sufficiency of evidence and burden of proof are relevant issues. In direct appeals authorized by statute, such challenges are authorized. However, the quality or quantity of the evidence used by the respondents to convince them that apportionment is proper is not mandated by law. It is purely a matter of their exercise of discretion and is not subject to attack by mandamus. Relators have failed to establish by pleadings or evidence that respondents have a definite, simple duty required by law to require more evidence than reciprocity reports in determining the question of apportionment. Whether characterized as an absence of standing or a failure in the pleadings and proof, relators are entitled to no relief. Accordingly, the judgment is affirmed.

ROBERTSON, C.J., and COVINGTON and BENTON, JJ., concur.

THOMAS, J., dissents in separate opinion filed.

PRICE and LIMBAUGH, JJ., concur in opinion of THOMAS, J.

THOMAS, Judge, dissenting.

I respectfully dissent. I disagree with the majority opinion that what relators attempt to do here is challenge the sufficiency of the evidence relied on to apportion taxes.

In *Bi Go Markets, Inc. v. Morton*, 843 S.W.2d 916 (Mo. banc 1992), we considered whether Missouri must apportion property tax on an airplane regularly kept, hangared and serviced in Missouri but owned by a corporation domiciled in New Hampshire. The aircraft made thirteen stops in New Hampshire out of a total of six hundred stops and was present overnight in that state three times. We held Missouri is not obligated to apportion unless and until the taxpayer establishes New Hampshire as a tax situs by showing that the property is deriving substantial opportunities, benefits and protections from New Hampshire by habitual and continuous use within New Hampshire. In *Bi Go Markets* we relied on *Peabody Coal Co. v. State Tax Commission*, 731 S.W.2d 837 (Mo. banc 1987), a similar airplane case. "Property does not become subject to multiple taxation simply because it is often taken across a state line." *Peabody Coal Co.* 731 S.W.2d at 839.

Missouri's right to assess an unapportioned tax on the trucks in the present case, in the absence of the taxpayer establishing a tax situs elsewhere, is even stronger than in either *Bi Go Markets* or *Peabody Coal Co.* because Missouri is both the domicile of the owner as well as the home base for the trucks. The rule is well established that a "taxpayer owning rolling stock cannot avoid the imposition of its domicile's property tax on the full value of its assets merely by proving that some determinable fraction of its property was absent from the State for part of the tax year." *Central R.R. v. Pennsylvania*, 370 U.S. 607, 611, 82 S.Ct. 1297, 1301, 8 L.Ed.2d 720 (1962) (reaffirming *New York Central R.R. v. Miller*, 202 U.S. 584, 26 S.Ct. 714, 50 L.Ed. 1155 (1906)). "Accordingly, the burden is on the taxpayer who contends that some portion of its total assets are beyond the reach of the taxing power of its domicile to prove that the same property may be similarly taxed in another jurisdiction." *Id.* 370 U.S. at 613, 82 S.Ct. at 1302.

The assessor in the present case does not even purport to require a showing by the taxpayer that the trucks have acquired a tax situs in another state. Relators need not and did not direct their request for a writ of mandamus to the process for apportioning ad valorem property taxes nor to the quality or quantum of proof required by a taxpayer to make the requisite showing for apportionment to apply. Rather, relators sought to use the writ to direct the assessor to require the taxpayer to establish a tax situs for the trucks outside Missouri before the assessor undertakes to apportion the property. The duty of an assessor to require such a showing before undertaking the process of apportionment is a simple, definite duty clearly imposed by law. I would leave it to the assessor to determine what quality and quantum of proof is required of a taxpayer to meet this requirement as well as to determine an appropriate procedure by which to accomplish the apportionment. However, I do not believe that an assessor has any discretion with respect to whether such a finding is required before apportionment is applicable. By apportioning automatically upon receiving the mileage reports from the Highway Reciprocity Commission, the assessor is apportioning merely upon a showing that these trucks have been driven outside the state of Missouri. This showing is clearly insufficient to establish a tax situs for the trucks in a state other than Missouri.

I would hold that relators have standing to enforce this simple, definite duty clearly imposed by the law. A writ of mandamus is appropriate under these circumstances. *See State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo. banc 1992), and the discussion of that case in the majority opinion.

I would reverse.