**STATE ex rel. ROYAL INSURANCE, et al., Respondents,**

v.

**DIRECTOR OF the MISSOURI DEPARTMENT OF INSURANCE, et al., Appellants.**

No. 77084.

Supreme Court of Missouri, En Banc.

Feb. 21, 1995.

**160**

Mark W. Stahlhuth, Jefferson City, for appellants.

Jeremiah W. (Jay) Nixon, Atty. Gen., John R. Munich, Michael L. Boicourt, Asst. Attys. Gen., Jefferson City, for amicus curiae.

John E. Bardgett, Charles S. Kramer, James B. Deutsch, Jefferson City, for respondents.

BENTON, Judge.

The Director of the Department of Insurance appeals a judgment of the circuit court declaring unconstitutional § 16 of Senate Bill No. 251. *§ 374.790 RSMo Supp.1993.*[1] This Court has jurisdiction under *Mo. Const. Art. V, § 3*, and affirms on other grounds.

### I.

Section 14 of S.B. 251 creates a "new residual market" for workers' compensation insurance. *§ 287.896.1.* This market covers employers unable to obtain insurance "through ordinary methods." *§ 287.896.2.* The Director establishes premium rates within general guidelines, along with "a system to distribute any residual market deficit" among private insurers. *Id.*

Section 16 of S.B. 251 then provides:

> The department of insurance shall prepare and submit a plan to the general assembly by September 1, 1993, to reduce the number of employers insured through the residual market. The department shall specifically examine and address in its plan the following topics:

> (1) The use of an employer's experience modification factor and the appropriate level thereof as an objective criteria in determining eligibility for coverage;

> (2) The maximum amount of such coverage an insurer would be required to issue, expressed as a percentage of its voluntary business;

> (3) Providing a system of incentives to insurers to voluntarily cover employers which had been insured through the resid-

---

1. All statutory references are to RSMo Supp. 1993, unless indicated otherwise.

ual market by reducing the amount of coverage required to be provided by such insurer under the plan;

(4) The effect of the implementation of such plan on the competitive voluntary insurance workers' compensation market in Missouri in terms of the number of insurers actively competing, the availability of coverage by classification and pricing by classification;

(5) Permitting insurers to file separate rates by classification for employers which they may be required to insure under such plan;

(6) Requiring that only agents which have been appointed by such insurer may submit applications for coverage under such plan;

(7) The results of this plan in other jurisdictions where it has been implemented in either workers' compensation or other lines of insurance;

(8) Requiring nonexperienced rated employers or employers not eligible for experience rating, as a condition to receive coverage, to utilize the insurer's managed care medical program and to comply with the insurer's loss control or safety engineering program.

Upon receipt of the plan, the general assembly shall, by concurrent resolution disapprove such plan by September 24, 1993. If the plan is not disapproved it shall be implemented by rule on January 1, 1994. If the plan is not submitted to the general assembly under the provisions of this section, it shall not be implemented by rule. § 374.790.

On September 1, 1993, the Chief Clerk of the House and the Secretary of the Senate received a "Workers' Compensation Residual Market Depopulation Plan." Neither the House nor the Senate disapproved the plan by September 24, 1993, nor did the members take any other official action on it. On October 4, 1993, the Director, under § 536.021, filed a proposed rule entitled "Residual Market Depopulation Plan" with the Secretary of State. Before the rule could be adopted, relator insurers obtained a preliminary writ of prohibition. The circuit court later entered summary judgment for the insurers, thereby permanently enjoining adoption of the proposed rule.

## II.

The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted. *Mo. Const. Art. II, § 1.*

One exercise of legislative power is a request for information from the executive department. *See, e.g., Mo. Const. Art. III, § 35; §§ 23.020(2) & 23.050.1 RSMo 1994.* Preparation of reports and recommendations, in turn, is an exercise of executive power. *Mo. Const. Art. IV, § 9; State ex rel. State Board of Mediation v. Pigg,* 362 Mo. 798, 244 S.W.2d 75, 82 (banc 1951). In this case, § 16 requires the Director to "prepare and submit" a plan to reduce the number of employers in the residual market, listing eight topics the Director shall address. *§ 374.790.* Section 16 does not require that the proposed *rule* be submitted to the General Assembly. Section 16 is—until the last three sentences—a demand for a report from the executive branch, a typical exercise of legislative power.

## III.

Rulemaking is an executive power. *Mo. Const. Art. IV, § 16.* The Director's rulemaking, however, must be authorized by a law, because all duties and organization of the Department of Insurance are determined by law. *Mo. Const. Art. IV, § 36(b).* The Director claims that the last three sentences of § 16 grant the power to implement, by rule, the plan received by the Chief Clerk of the House and the Secretary of the Senate.

The first of these three sentences requires the General Assembly upon "receipt of the plan" to disapprove it "by concurrent resolution." *§ 374.790.* Under the Constitu-

tion, a concurrent resolution passed by both the House and Senate is presented to the governor and "proceeded upon in the same manner as in the case of a bill." *Mo. Const. Art. IV, § 8.* In order to have "the force and effect of law"—as opposed to regulating only the internal affairs of the Assembly—a concurrent resolution must either be approved by the governor or passed over the governor's objections. *Mo. Const. Art. III, §§ 31 & 32; Padberg v. Roos,* 404 S.W.2d 161, 166 (Mo. banc 1966); *State ex rel. Jones v. Atterbury,* 300 S.W.2d 806, 813–18 (Mo. banc 1957); *Bohrer v. Toberman,* 360 Mo. 244, 227 S.W.2d 719, 723 (banc 1950). In this case, the General Assembly and governor did not exercise lawmaking power to disapprove the Director's plan by concurrent resolution.

 As a result, the Director bases rulemaking authority on the second of the three sentences: "If the plan is not disapproved it shall be implemented by rule on January 1, 1994." Relator insurers contend that such rulemaking authority is negated by the third sentence: "If the plan is not submitted to the general assembly under the provisions of this section, it shall not be implemented by rule."

Read together, the last three sentences of § 16 show the General Assembly's intent to have the option to exercise lawmaking power to disapprove the Director's plan. Because there could be no regular session between September 1 and September 24, 1993, the Assembly had to convene in special session to legislate by concurrent resolution. *Mo. Const. Art. III, § 20.* Either the governor or three-fourths of the members of each house can call the General Assembly into special session. *Mo. Const. Art. III, § 20(b); Art. IV, § 9; Art. III, § 39(7).* Between September 1 and September 24, 1993, the governor did not convene the Assembly to consider disapproving the Director's plan.

Therefore, the General Assembly could only disapprove the plan by convening itself in special session. In order to consider the option of convening, the Assembly first had to receive the plan, as required by § 16 of S.B. 251. The General Assembly consists of 163 House members and 34 Senate members. *Mo. Const. Art. III, §§ 1, 2, & 5.* According to the record in this case, the 163 House members were never notified of the Director's plan. The Chief Clerk (who did receive the plan) is not a "member" of the House, nor had any duty to distribute the plan to members. *Mo. Const. Art. III, § 18; House Rules 4, 16 (1993); cf. § 21.545.2.*

The claimed grant of rulemaking authority in § 16 states: "If the plan is not submitted to the general assembly under the provisions of this section, it shall not be implemented by rule." Because there was no "receipt" of the plan by the House members, the plan was not "submitted" to the General Assembly in compliance with § 16 of S.B. 251. The circuit court therefore properly prohibited the Director from implementing the plan by rule.

## IV.

The judgment of the circuit court is affirmed.

All concur.