**MISSOURI COALITION FOR
THE ENVIRONMENT,
et al., Relators,**

v.

**JOINT COMMITTEE ON ADMIN-
ISTRATIVE RULES, etc., et
al., Respondents.**

No. 78628.

Supreme Court of Missouri,
En Banc.

Jan. 21, 1997.

As Modified on Denial of Rehearing
Feb. 25, 1997.

Lewis C. Green, Bruce A. Morrison, Kathleen G. Henry, St. Louis, for Relators.

Jeremiah W. (Jay) Nixon, Attorney General, Joseph P. Bindbeutel, Assistant Attorney General, Jefferson City, for Respondents.

PRICE, Judge.

"At some point the right case will arise challenging the powers of the JCAR. It should come as no surprise to anyone when those powers are ruled unconstitutional." Kenneth D. Dean, *Legislative Veto of Administrative Rules in Missouri: A Constitutional Virus*, 57 Mo. L.Rev. 1157, 1216 (1992).

### I.

Relators are individuals who reside near landfills in Missouri and the Missouri Coalition for the Environment, an organization concerned with enforcement of Missouri's Solid Waste Management Law (MSWML). They claim benefit from a regulation that was adopted by the Department of Natural Resources (DNR) under the MSWML and was submitted to the secretary of state for publication. The individual relators claim that they suffer foul odors, noise from passing landfill trucks, and a heightened risk of injury from traffic flowing to landfills adjacent to their homes. They further contend that the regulation at issue will curtail these nuisances and enhance their lifestyle.

Respondents are the Joint Committee on Administrative Rules (JCAR), its members, the secretary of state, the DNR, and the director of the DNR. The secretary of state refused to publish the regulation at issue because the DNR had not first submitted the proposed regulation to the JCAR, a committee empowered by the legislature to veto the proposed rule. Relators seek an order in mandamus requiring the secretary of state to publish that rule, a declaratory judgment

holding legislative veto power unconstitutional, and an injunction preventing the JCAR from further actions. The trial court granted summary judgment for respondents, finding the case moot and, therefore, nonjusticiable.

Because the legislature may not grant itself power that unconstitutionally impinges upon the executive branch of our tripartite government, we declare § 260.225, RSMo Supp.1990, unconstitutional. Section 260.225, RSMo Supp.1990, violated the separation of powers provisions of Missouri Constitution article II, § 1 by permitting the legislature to suspend publication and promulgation of the DNR's final orders of rulemaking for up to twenty days while the legislature reviewed such rules. Section 260.225, RSMo Supp. 1990, violated both the separation of powers provisions of Missouri Constitution article II, § 1 and the passage and presentment requirements of Missouri Constitution article III, §§ 21 and 31 by permitting the legislature to prevent promulgation and enforcement of DNR rules it disapproved and to suspend and withdraw rules already promulgated by the DNR. We reverse the trial court and order the secretary of state to publish in the Missouri Register the final order of rulemaking submitted to the secretary of state by the DNR on July 16, 1992.

### II.

In 1975, the Missouri legislature created the Joint Committee on Administrative Rules (JCAR). Section 536.037, RSMo Supp.1975. The committee was composed of five senators appointed by the president pro tem of the Senate and five representatives appointed by the Speaker of the House. Section 536.037.1, RSMo Supp.1975.[1] Initially, the committee merely "reviewed" rules and regulations promulgated by executive agencies.

---

1. Section 536.037.1, RSMo Supp.1975, provides:

1. There is established a permanent joint committee of the general assembly to be known as the "Committee on Administrative Rules", which shall be composed of five members of the senate and five members of the house of representatives. The senate members of the committee shall be appointed by the president pro tem of the senate and the house members by the speaker of the house. The appointment of each member shall continue during his term of office as a member of the general assembly unless sooner removed. No major party shall be represented by more than three appointed members from either house.

Section 536.037.3, RSMo Supp.1975.[2] The committee was to report findings and recommendations to the General Assembly, to the Commissioner of Administration, and to the elected state officer who promulgated the rule. Section 536.037.4, RSMo Supp.1975.[3] The statute also provided that the necessary expenses of committee members attending JCAR hearings were to be paid out of the joint contingent fund. Section 536.037.5, RSMo Supp.1975.[4] Despite the fact that citizens of this state twice defeated proposed constitutional amendments attempting to grant the General Assembly power to invalidate administrative rules and regulations,[5] subsequent legislation granted the committee power to suspend rules,[6] the right to prior approval of rules,[7] and power to nullify rules already in effect.[8]

The statute at issue in this case[9] mandated prior approval by the JCAR of rules proposed under the authority of the MSWML. Section 260.225, subsections 4 and 5, RSMo Supp.1990.[10] The agency was required to submit the proposed rules to the JCAR when it submitted the proposed rules to the secretary of state for notice and comment publication. Section 260.225.4, RSMo Supp.1990. The JCAR could "disapprove" such a rule. *Id.* If the JCAR failed to sus-

---

2. Section 536.037.3, RSMo Supp.1975, provides:
 3. The committee shall review all rules promulgated by any agency after January 1, 1976, except rules which are rewritten and refiled within ninety days after January 1, 1976, pursuant to section 536.023, and it may review any or all other rules of any agency. In its review the committee may take such action as it deems necessary which may include holding hearings.

3. Section 536.037.4, RSMo Supp.1975, provides:
 4. If the committee finds that any rule, whether promulgated before or after January 1, 1976, should be amended or rescinded in whole or in part, it shall report such findings and recommendations to the general assembly, to the commissioner of administration, and to the elected state officer, if any, who promulgated the rule.

4. Section 536.037.5, RSMo Supp.1975, provides:
 5. The members of the committee ... may receive their necessary expenses while attending the meetings of the committee, to be paid out of the joint contingent fund.

5. Senate Joint Resolution No. 29 was defeated August 3, 1976 and House Resolution No. 36 was defeated on November 2, 1982.

6. *See, e.g.,* § 173.612, RSMo (enacted 1983; amended 1991). For a comprehensive listing of statutes containing such provisions see Kenneth D. Dean, *Legislative Veto of Administrative Rules in Missouri: A Constitutional Virus,* 57 Mo. L.Rev. 1157, 1217–23 (1992).

7. *See, e.g.,* § 197.445, RSMo (enacted 1983). For a comprehensive listing of statutes containing such provisions see Dean, *supra* note 5, at 1223–24.

8. *See, e.g.,* § 277.160, RSMo (enacted 1989). For a comprehensive listing of statutes containing such provisions see Dean, *supra* note 5, at 1224–31.

9. Subsections 4 and 5 of § 260.225, RSMo Supp. 1990, provide:
 4. No rule or portion of a rule promulgated under the authority of sections 260.200 to 260.345 shall become effective until it has been approved by the joint committee on administrative rules. Upon filing any proposed rule with the secretary of state, the department shall concurrently submit such proposed rule to the committee which may hold hearings upon any proposed rule and may disapprove any proposed rule or portion thereof at any time. In the event the committee disapproves any proposed rule or portion thereof, the committee shall notify the department and the secretary of state. If any proposed rule or portion thereof is disapproved by the committee, the secretary of state shall publish in the Missouri Register, as soon as practicable, an order that such rule or portion thereof has been disapproved.
 5. The department shall not file any final order of rulemaking with the secretary of state until twenty days after such final order of rulemaking has been received by the committee. The committee may hold one or more hearings upon such final order of rulemaking during the twenty-day period. If the committee neither approves nor disapproves any order of rulemaking within the twenty-day period, the department may file such order of rulemaking with the secretary of state and the order of rulemaking shall be deemed approved, subject to subsequent suspension by the committee. In the event the committee disapproves any order of rulemaking or portion thereof, the committee shall notify the department and the secretary of state.

10. In 1986, the legislature amended the MSWML adding § 260.225 that purportedly vested the JCAR with power to disapprove DNR rules. The legislature amended MSWML again in 1990, creating the version of § 260.225 that was in effect at the time the events of this litigation arose.

pend the rule within twenty days, the agency was permitted to submit the rule for publication as a final order of rulemaking and it was deemed approved by the JCAR. Section 260.225.5, RSMo Supp.1990. The 1990 version of § 260.225 also provided that any rule promulgated under any section of the MSWML could be suspended after publication at any time by the JCAR. Section 260.225.6, RSMo Supp.1990.

In 1992, the DNR attempted to promulgate a rule that required, among other things, that those seeking permits from the DNR for landfills and waste processing plants first submit documents indicating that they had complied with all local zoning, planning, licensing, and permit requirements. The DNR submitted the proposed rule to the secretary of state for notice and comment publication in the Missouri Register. The secretary published the proposed rule on

April 17, 1992. Missouri Register, Volume 17, Number 8, p. 519. On July 16, 1992, the DNR submitted to the secretary of state a final order of rulemaking on the proposed regulations. On July 20, 1992, the secretary of state refused to publish the final order of rulemaking, stating that the promulgation requirements of § 260.225 had not been fulfilled because the proposed order of rulemaking had never been submitted to the JCAR for its approval or veto.

On September 4, 1992, relators filed this suit. The General Assembly amended § 260.225 in 1993 to permit the JCAR to suspend rules for thirty legislative days [11] and to allow the General Assembly to ratify the JCAR's suspension by separate resolution [12] and to revoke rules already in effect by concurrent resolution.[13] Section 260.225, RSMo 1994. In 1995 the legislature passed Section 536.024, RSMo Supp.1995,[14] which

11. Section 260.225.6, RSMo 1994, provides:
A final order of rulemaking shall not be filed with the secretary of state until thirty days after such final order of rulemaking has been received by the committee. The committee may hold one or more hearings upon such final order of rulemaking during the thirty-day period. If the committee does not disapprove such order of rulemaking within the thirty-day period, the filing agency may file such order of rulemaking with the secretary of state and the order of rulemaking shall be deemed approved.

12. Section 260.225.9, RSMo 1994, provides:
If the committee disapproves any rule or portion thereof, the committee shall report its findings to the senate and the house of representatives. No rule or portion thereof disapproved by the committee shall take effect so long as the senate and the house of representatives ratify the act of the joint committee by resolution adopted in each house within thirty legislative days after such rule or portion thereof has been disapproved by the joint committee.

13. Section 260.225.10, RSMo 1994, provides:
Upon adoption of a rule as provided herein, any such rule or portion thereof may be suspended or revoked by the general assembly either by bill or, pursuant to section 8, article IV of the constitution, by concurrent resolution upon recommendation of the joint committee on administrative rules. The committee shall be authorized to hold hearings and make recommendations pursuant to the provisions of section 536.037, RSMo. The secretary of state shall publish in the Missouri Register, as soon

as practicable, notice of the suspension or revocation.

14. That section provides:
1. When the general assembly authorizes any state agency to adopt administrative rules or regulations pursuant to this section, the granting of such rulemaking authority and the validity of such rules and regulations is contingent upon the agency complying with the provisions of this section in promulgating such rules after June 3, 1994.
2. No rule or portion of a rule promulgated under the authority of any provision of Missouri statutes shall become effective until it has been approved by the joint committee on administrative rules in accordance with the procedures provided herein, and the delegation of the legislative authority to enact law by the adoption of such rules is dependent upon the power of the joint committee on administrative rules to review and suspend rules pending ratification by the senate and the house of representatives as provided herein.
3. Upon filing any proposed rule with the secretary of state, the filing agency shall concurrently submit such proposed rule to the committee, which may hold hearings upon any proposed rule or portion thereof at any time.
4. A final order of rulemaking shall not be filed with the secretary of state until thirty days after such final order of rulemaking has been received by the committee. The committee may hold one or more hearings upon such final order of rulemaking during the thirty-day period. If the committee does not disapprove such order of rulemaking within the thirty-day period, the filing agency may file such order of

apr.ies to all rulemaking by the executive branch, repealed the 1993 version of § 260.225, and incorporated by reference § 536.024.[15] The provisions of § 536.024 are substantially the same as the veto provisions of the 1993 version of § 260.225. On April 18, 1994, the DNR purportedly withdrew the final order of rulemaking it had submitted to the secretary of state on July 16, 1992.

The St. Louis County Circuit Court granted respondents' motion for summary judgment, ruling the cause moot because the proposed rules had been withdrawn, the statute had been amended, and the legislature had not actually exercised the veto. This appeal followed.

We have jurisdiction. Mo. Const. art. V, § 3.

### III.

As a preliminary matter, the individual relators have standing to bring this action both as to the secretary of state's refusal to publish the final order of rulemaking submitted to him on July 16, 1992, and as to the broader constitutional issues.

rulemaking with the secretary of state and the order of rulemaking shall be deemed approved.

5. The committee may, by majority vote of the members, suspend the order of rulemaking or portion thereof by action taken prior to the filing of the final order of rulemaking only for one or more of the following grounds:

(1) An absence of statutory authority for the proposed rule;

(2) An emergency relating to public health, safety or welfare;

(3) The proposed rule is in conflict with state law;

(4) A substantial change in circumstance since enactment of the law upon which the proposed rule is based;

(5) The proposed rule is arbitrary and capricious.

6. If the committee disapproves any rule or portion thereof, the filing agency shall not file such disapproved portion of any rule with the secretary of state and the secretary of state shall not publish in the Missouri Register any final order of rulemaking containing the disapproved portion.

7. If the committee disapproves any rule or portion thereof, the committee shall report its findings to the senate and the house of representatives. No rule or portion thereof disapproved by the committee shall take effect so

"The principle at the heart of [the writ of mandamus] is that public officers are required to perform ministerial duties without any request or demand, and the entire public has the right to that performance." *State ex rel. Twenty–Second Judicial Circuit v. Jones,* 823 S.W.2d 471, 475 (Mo. banc 1992). "Where the duty sought to be enforced is a simple, definite ministerial duty imposed by law, the threshold for standing is extremely low." *State ex rel. Cabool v. Texas County Bd. of Equalization,* 850 S.W.2d 102, 105 (Mo. banc 1993).

Here, the individual relators seek enforcement of the secretary of state's duty to publish a final order of rulemaking. The secretary of state has no discretion in publishing such rules. Once the rule has been properly submitted, the secretary must publish it. Section 536.021.7, RSMo Supp.1992 (providing that "[a]ll rules *shall* be published in full" (emphasis added)). This is a "definite ministerial duty imposed by law." *Cabool,* 850 S.W.2d at 105. Because the secretary declined to perform the duty imposed upon him by law, a member of the general public

long as the senate and the house of representatives ratify the act of the joint committee by resolution adopted in each house within thirty legislative days after such rule or portion thereof has been disapproved by the joint committee.

8. Upon adoption of a rule as provided herein, any such rule or portion thereof may be suspended or revoked by the general assembly either by bill or, pursuant to section 8, article IV of the constitution, by concurrent resolution upon recommendation of the joint committee on administrative rules. The committee shall be authorized to hold hearings and make recommendations pursuant to the provisions of section 536.037. The secretary of state shall publish in the Missouri Register, as soon as practicable, notice of the suspension or revocation.

9. The provisions of this section shall not apply to rules promulgated by the public service commission and the labor and industrial relations commission.

15. Subsection 4 of § 260.225, RSMo Supp.1995, provides:

No rule or portion of a rule promulgated under the authority of sections 260.200 to 260.345 shall become effective unless it has been promulgated pursuant to the provisions of section 536.024, RSMo.

can bring an action to enforce his duty to publish the final order of rulemaking.

 Additionally, the individual relators have standing as taxpayers to challenge the constitutionality of JCAR's expenditure of public funds. *Harris v. Missouri Gaming Comm'n,* 869 S.W.2d 58, 60 (Mo. banc 1994). The statute creating the JCAR provides in pertinent part that "members of the committee ... may receive their necessary expenses while attending the meetings of the committee, to be paid out of the joint contingent fund." Section 536.037.5, RSMo Supp.1975. "[A] taxpayer has standing to challenge an alleged illegal spending of public funds *if* there is a 'direct expenditure of funds generated through taxation....'" *Harris,* 869 S.W.2d at 60 (quoting *Eastern Mo. Laborers Dist. Council v. St. Louis County,* 781 S.W.2d 43, 47 (Mo. banc 1989)) (emphasis in original). Relators allege expenditure of public funds by the JCAR in the years 1986 through 1992. The stipulation of facts indicates that JCAR reviewed and disapproved rules that agencies had proposed. Thus, the individual relators have taxpayer standing and may challenge the constitutionality of the current JCAR statute.

 The question of the standing of the Missouri Coalition for the Environment is more troublesome. In essence, the Coalition alleges two grounds for standing. First, it is alleged that the Coalition actively participates in hearings before the Department of Natural Resources, that it is concerned with the effective enforcement of the MSWML, and that it has "devoted substantial efforts to lobbying for the enactment and effective enforcement of that law." In this regard, the coalition does not claim any concrete injury beyond non-implementation of its preferred policy choices on account of JCAR. This is not sufficient to establish standing.

The Coalition's second attempt to establish standing is that "members of the Coalition reside in the vicinity of solid waste disposal areas and solid waste processing facilities located within Missouri. The Coalition brings this suit to redress the injuries to its members ..." Because we have found that the individual relators have personal standing, the question of whether the coalition can

assert such "associational" standing, *see, e.g., Missouri Outdoor Adv. v. Missouri Hwys. & Transp. Comm'n,* 826 S.W.2d 342, 344 (Mo. banc 1992), is moot and need not be addressed.

## IV.

### A.

 "[W]e presume that [a] statute is valid unless it clearly contradicts a constitutional provision." *Asbury v. Lombardi,* 846 S.W.2d 196, 199 (Mo. banc 1993); *see also Mahoney v. Doerhoff Surgical Servs.,* 807 S.W.2d 503, 512; *In re Trapp,* 593 S.W.2d 193, 202 (Mo. banc 1980); *Prokopf v. Whaley,* 592 S.W.2d 819, 824 (Mo. banc 1980). Nevertheless, "[i]t is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 2 L.Ed. 60 (1803), and to determine the constitutionality of statutes.

The Missouri Constitution decrees:

The powers of government shall be divided into three *distinct* departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution *expressly* directed or permitted.

Mo. Const. art. II, § 1 (emphasis added). This provision has appeared in the Missouri Constitution in substantially the same form since 1820.

 This Court has consistently held that the doctrine of separation of powers, as set forth in Missouri's constitution, is "vital to our form of government," *State ex inf. Danforth v. Banks,* 454 S.W.2d 498, 500 (Mo. banc 1970), because it "prevent[s] the abuses that can flow from centralization of power." *State Tax Comm'n v. Administrative Hearing Comm'n,* 641 S.W.2d 69, 73–74 (Mo. banc.1982). While "it was not the purpose [of the Constitution] to make a total separation of these three powers[, each branch of government] ought to be kept as separate

from and independent from, each other as the nature of free government will admit, or as is consistent with that chain of connection which binds the whole fabric of the Constitution in one indissoluble bond of union and amity." *Rhodes v. Bell,* 230 Mo. 138, 130 S.W. 465, 468 (1910) (citations omitted). The Missouri Constitution

> carefully divides the powers of government into three distinct and named departments; sedulously segregates each from the other; confides each to a separate magistracy; and then, not satisfied with such strict demarkation (sic) of the boundaries of their respective jurisdictions, peremptorily forbids either of such departments from passing the prohibitory precincts thus ordained by the exercise of powers properly belonging to either of the others, and then concludes by giving the sole exception to the unbending rule by saying, "except in the instances in this constitution expressly directed or permitted." ... Lacking such express direction or express permission, the act done must incontinently be condemned as unwarranted by the constitution.... Each department of the government is essentially and necessarily distinct from the others, and neither can lawfully trench upon or interfere with the powers of the other; and our safety, both as to national and state governments, is largely dependent upon the preservation of the distribution of power and authority made by the constitution, and the laws made in pursuance thereof.

**16.** It has also been argued that the JCAR statutory provision unconstitutionally usurps judicial power. We need not address this additional issue in light of our holding.

**17.** Kenneth D. Dean and Scott Welman have written articles concerning the constitutional offensiveness of the various JCAR statutes. This decision need not address the topic in such detail, although the articles are recommended to any serious student of administrative and constitutional law. Dean points out that of the states that have ruled on the constitutionality of the "legislative veto," Alaska, West Virginia, New Hampshire, New Jersey, Kansas, Pennsylvania, Kentucky, South Carolina, and Montana found the provision unconstitutional. Only Idaho and Wisconsin have ruled to the contrary. Kenneth

*Albright v. Fisher,* 164 Mo. 56, 64 S.W. 106, 108–09 (1901).

The statutory provision at issue here goes well beyond any incidental overlap of powers. Indeed, it violates constitutional principles concerning the separation of executive and legislative functions in at least two ways.[16] It permits the legislature: 1) to unconstitutionally interfere with the functions of the executive branch; and 2) to circumvent the constitution's bill passage and presentment requirements.[17]

### B.

■ Article II, § 1 strictly confines the power of the legislature to enacting laws and does not permit the legislature to execute laws already enacted. Section 260.225 violates this principle by 1) suspending publication and, therefore, promulgation of the DNR's final orders of rulemaking for up to twenty days while the JCAR reviews such rules; 2) preventing promulgation and enforcement of DNR rules the JCAR disapproves; and 3) permitting the JCAR to suspend and withdraw rules already promulgated by the DNR.

■ The DNR is an executive agency. Mo. Const. art. IV, § 47. Promulgation of rules and regulations is an executive function. *State ex rel. Royal Ins. v. Director of Missouri Dept. of Ins.,* 894 S.W.2d 159, 161 (Mo. banc 1995). Article IV, Section 16 of Missouri's constitution, expressly recognizes the authority of the executive branch to issue regulations. It provides that "[a]ll rules and regulations of any board or other administra-

D. Dean, *Legislative Veto of Administrative Rules in Missouri: A Constitutional Virus,* 57 Mo. L.Rev. 1157, 1216 (1992); Scott Welman, *Joint Committee on Administrative Rules: The Missouri Legislature's disregard for the Missouri Constitution,* 58 UMKC L.Rev. 113 (1989). Since the publication of those articles, Oregon also has joined the ranks of those states striking down the legislative veto as unconstitutional. *Gilliam County v. Department of Environmental Quality of Oregon,* 316 Or. 99, 849 P.2d 500, 505–06 (1993), rev'd on other grounds sub nom. *Oregon Waste Systems v. Department of Environmental Quality,* 511 U.S. 93, 114 S.Ct. 1345, 128 L.Ed.2d 13 (1994), re-affirmed on remand, 319 Or. 251, 876 P.2d 749 (1994).

tive agency of the executive department, except those relating to its organization and internal management, shall take effect not less than 10 days after the filing thereof in the office of the secretary of state." Mo. Const. art IV, § 16. This provision indicates no legislative involvement in the rulemaking process.

Once the legislature "makes its choice in enacting legislation, its participation ends." *Bowsher v. Synar*, 478 U.S. 714, 733–34, 106 S.Ct. 3181, 3191–92, 92 L.Ed.2d 583 (1986). The legislature may not unilaterally control execution of rulemaking authority after its delegation of rulemaking power, regardless of whether it does so by suspension, revocation, or prior approval of administrative rules. It may, of course, attempt to control the executive branch by passing amendatory or supplemental legislation and presenting such legislation to the governor for signature or veto, or, by the power of appropriation. The legislature may also hold committee hearings, conduct investigations, or request information from the executive branch. *Royal Ins.*, 894 S.W.2d at 161; *State v. Atterbury*, 300 S.W.2d 806, 810, 818 (Mo. banc 1957); Mo. Const. art. III, § 22.

### C.

The constitution's passage and presentment requirements form the second barrier to the constitutionality of the legislative veto. Properly promulgated rules have the "force and effect of law." *Page Western, Inc. v. Community Fire Protection Dist.*, 636 S.W.2d 65, 68 (Mo. banc 1982); Section 536.010(4), RSMo.1994.[18] "No law shall be passed [by the legislature] except by bill . . . ." Mo. Const. art. III § 21.

> Every bill which shall have passed the house of representatives and the senate shall be presented to and considered by the governor, and, within fifteen days after presentment, he shall return such bill to the house in which it originated endorsed with his approval or accompanied by his objections. If the bill be approved by the governor it shall become a law.

Mo. Const. art. III, § 31. Thus, legislative actions, whether by committee, by resolution of one house, or by joint resolution of the whole legislature, cannot amend, modify, rescind, or supplant any rule promulgated by an agency unless the legislature follows the bill passage requirements. The bill must be passed by majority vote of the House and Senate, and the Governor must be given an opportunity to veto the bill. Of course, the legislature may override such veto by a two-thirds majority vote in both the House and Senate. Mo. Const. Art. III, § 32.

A preemptive action of the legislature, whether such action be suspension of a rule, revocation of a rule, or prior approval of a proposed rule, must be a "legislative" action. For if such action is not legislative, the legislature has no right to do it. Richard I. Goldsmith, *INS v. Chadha and the Non–Delegation Doctrine: A Speculation*, 35 Syracuse L.Rev. 749, 753 (1984). As such, it is subject to the constitutional mandates for bill passage. The proper process for legislative curtailment of agency rulemaking, then, is confined to that outlined in article III for bill passage and presentment.

Such process was neither mandated by § 260.225, RSMo Supp.1990, nor followed by the legislature. Section 260.225, RSMo Supp.1990, violates the passage and presentment requirements of article III, §§ 21 and 31 by preventing promulgation and enforcement of DNR rules the JCAR disapproves and by permitting the JCAR to suspend and withdraw rules already promulgated by the DNR.

### D.

The legislature's goal of seeking to curtail overzealous bureaucratic intrusion in citizens' lives is certainly laudable. However, it does not warrant an equally overzealous concentration of power in the legislature. The strong separation of powers policy written into the constitution is reflective of its authors' belief in Thomas Jefferson's proposition that "concentration of the three powers

---

**18.** Section 536.010(4), RSMo 1994, provides in pertinent part that " 'Rule' means each agency statement of general applicability that imple-

ments, interprets, or prescribes law or policy . . . . "

'in the same hands is precisely the definition of despotic government.'" Gordon S. Wood, *Creation of the American Republic, 1776–1787* 451–52 (1969). That the power is concentrated in the legislative branch does not relieve that power of its despotic nature. The "absorption of 'all the powers of government, legislative, executive, and judiciary,'" even if by the democratically elected legislature, amounts to no more than "'elective despotism.'" *Id.*

> The doctrine of the separation of powers [is not meant to] promote efficiency but to preclude the exercise of arbitrary power. The purpose [is] not to avoid friction, but, by means of the inevitable friction incident to the distribution of the governmental powers among three departments, to save the people from autocracy.

*Myers v. United States,* 272 U.S. 52, 293, 47 S.Ct. 21, 85, 71 L.Ed. 160 (1926) (Brandeis, J., dissenting).

## V.

Respondents make two arguments that this case is moot. First, they argue that subsequent statutory amendments moot the claim that the powers granted the JCAR by § 260.225 are unconstitutional. Second, they argue that the case is moot because the DNR withdrew the final order of rulemaking here at issue. Both arguments fail.

## A.

The legislature has amended § 260.225 twice since the secretary of state refused to publish the rule at issue.[19] In its present form, § 260.225 requires that no rule may become effective unless it is promulgated pursuant to the provisions of § 536.024, RSMo Supp.1995. *See* Section 260.225, RSMo Supp.1995. Section 536.024 is a new statute that provides a comprehensive scheme for all rulemaking authority granted to the executive department.

Unfortunately, the new statute does not eliminate the nature of the controversy alleged. It still provides for a 30 day suspension of executive rulemaking by JCAR, permitting legislative intrusion into executive powers in violation of article II § 1. The new statute also provides for a complete veto of any promulgated rule upon action of the senate and house of representatives, without presentment to the governor. This allows continued violation of the passage and presentment requirements of article III § 21.[20]

Although a subsequent statutory amendment may moot a case when an amendment removes the question at issue so that any judgment "would not have any practical effect upon any then existing controversy," *Bank of Washington v. McAuliffe,* 676 S.W.2d 483, 487 (Mo. banc 1984), a case is not mooted when the controversy continues regardless of the amendment. Here, essentially the same constitutional infirmity infects both the earlier and later versions of the statute.[21]

## B.

The DNR submitted orders of rulemaking to the secretary of state on April 18, 1994, purporting to "withdraw" the final orders of rulemaking the DNR had submitted to the secretary of state as proposed rules on April 17, 1992, and as final orders of rulemaking on July 16, 1992. Respondents argue that relators' request for a writ of mandamus is mooted by that action.

This argument ignores § 536.021, subsections 5 and 6, RSMo Supp.1993, and the fact that, when the secretary of state improperly refused to publish the DNR's final order of rulemaking on July 20, 1992, the rule was, for purposes of this litigation, promulgated.[22] Subsection 5 provides that a rule may be withdrawn within 90 days from the last day for comment on the proposed rule or the last

---

**19.** Section 260.225, RSMo 1994; Section 260.225, RSMo Supp.1995.

**20.** Compare § 536.024.7 and § 536.024.8.

**21.** Relator's petition, filed in 1992, of course, did not challenge the amendments to the statutory scheme of 1995. In a technical sense, our holding does not go to those amendments, although they are subject to the same constitutional attack.

**22.** Section 536.021.5, RSMo Supp.1993 provides in pertinent part:

> Within ninety days after the expiration of the time for filing statements in support of or in opposition to the proposed rulemaking, or within ninety days after the hearing on such proposed rulemaking if a hearing is held thereon, the state agency proposing the rule shall file with the secretary of state an order of rulemaking either adopting the proposed rule,

day hearings were held on the proposed rule. After a rule has been promulgated, however, it only can be withdrawn by a subsequent order of rulemaking repealing the prior rule that has followed the procedures of § 536.021 and has been published in the Missouri Register.

Because the rule was promulgated for purposes of this challenge on July 20, 1992, it can only be repealed by a subsequent order of rulemaking that is first published as a proposed rule, permitted to be commented on by the public, and published as a final order of rulemaking in the Missouri Register. *See National Treasury Employees Union v. Cornelius,* 617 F.Supp. 365, 371 (D.C.D.C. 1985) (agencies may not unilaterally repeal regulations dealing with the substantive rights of individuals merely by declaring that the earlier regulations were just a mistake); *cf.* Model State Admin. Proc. Act § 3 and § 154 (1961). Until action is taken by the DNR in accordance with the requirements of § 536.021.5, relators are entitled to that final order's publication.

## VI.

■ Respondents also argue that this case is not ripe for adjudication because the JCAR had taken no action to veto the proposed rule. Respondents argument is inapposite. The issue presented for the court in deciding to issue the writ of mandamus is not whether the JCAR has taken action, but whether the secretary of state refused to publish the final order of rulemaking in reliance upon unconstitutional provisions within § 260.225. That controversy is ripe for ruling.

■ Additionally, relators have alleged that public funds have been expended in furtherance of the challenged JCAR activities. The issue of the constitutionality of such expenditures is ripe for a taxpayer challenge.

## VII.

■ Finally, respondents allude to § 260.225.7, RSMo Supp.1990, which purportedly nullifies all rulemaking power grant-

ed the DNR if the legislative "review power" is found unconstitutional. That section provides in part:

> Notwithstanding the provisions of section 1.140, RSMo, the provisions of this section are nonseverable and the grant of rulemaking authority is essentially dependent on the review power vested with the committee. If the review power is held unconstitutional or invalid, the grant of rulemaking authority and any rule promulgated under such rulemaking authority shall also be invalid or void.

Section 260.225.7, RSMo Supp.1990. That section is phrased in terms of the "review power vested with the committee." The legislature is certainly free to empower a committee to *review* regulatory action of the executive department and to take further action consistent with its constitutional role. *See, e.g.,* § 536.037, subsections 1, 3, and 4, RSMo 1994. Our holding is limited only to the constitutional inability of the legislature to unilaterally suspend or veto such regulatory action.

## VIII.

We reverse the trial court and declare § 260.225, RSMo Supp.1990, unconstitutional, insofar as it purported 1) to suspend publication and promulgation of the DNR's final orders of rulemaking for up to twenty days while the JCAR reviewed such rules; 2) to prevent promulgation and enforcement of DNR rules the JCAR disapproved; and 3) to permit the JCAR to suspend and withdraw rules already promulgated by the DNR.

We further Order the secretary of state to publish the final order of rulemaking which it formerly refused to publish on July 20, 1992.

BENTON, LIMBAUGH, ROBERTSON, COVINGTON and WHITE, JJ., and BARNEY, Special Judge, concur.

HOLSTEIN, C.J., not sitting.

---

with or without further changes, or withdrawing the proposed rule, which order shall be published in the Missouri Register.

Subsection 6 provides in pertinent part:

[A]ny rule, or amendment or rescission thereof, made after January 1, 1976, shall be void unless made in accordance with the provisions of this section.